**Jeffrey Lee McKINSTRY, Plaintiff,**

v.

**GENESEE COUNTY CIRCUIT JUDGES, Defendants.**

**No. 87–CV–40114–FL.**

United States District Court,
E.D. Michigan, S.D.

Sept. 1, 1987.

Gordon M. Bloem, Legal Services of Eastern Michigan, Midland, Mich., for plaintiff.

Richard M. Barron, Flint, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

■ Before the Court are several motions pending in the above-captioned matter. Frank J. Kelley, Attorney General of the State of Michigan, filed a motion to intervene as a defendant in this action pursuant to Rule 24(a)(2) and (b)(2), Fed.R. Civ.P. Rule 24(a)(2) states that intervention shall be permitted:

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In *Meyer, Goldberg Inc. of Lorain v. Goldberg,* 717 F.2d 290, 292 (6th Cir.1983), the Court of Appeals stated:

> The Supreme Court has yet to comprehensively define, if such definition is possible, the nature of the 'interest' prerequisite to intervention as of right. In *Donaldson v. United States,* 400 U.S. 517, 532, 91 S.Ct. 534, 543, 27 L.Ed.2d 580 (1971), the Supreme Court simply noted that '[w]hat is obviously meant [by Rule 24(a)(2) ] is a significantly protectable interest.' Similarly, in *Brewer v. Republic Steel Corp.,* 513 F.2d 1222,

1223 (6th Cir.1975), this Court stated that a *'direct, substantial, interest* in [the] litigation' is required by Rule 24(a)(2). (emphasis added).

Here, the Court concludes that the Attorney General has not shown a direct, substantial interest in whether those involved in contempt proceedings are informed of their right to counsel and those who are indigent are given appointed counsel. He has also shown no identity of interests with the defendants. It is obvious the Attorney General is in a different branch of government than are the defendants. Thus, the Court need not consider whether the interests of the Attorney General will be adequately represented. He has no interest.

Rule 24(b), which deals with permissive intervention, states in pertinent part that:

> Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

In *Usery v. Brandel*, 87 F.R.D. 670, 677 (W.D.Mich.1980), the court stated:

> It is easy enough to see what are the arguments against intervention where, as here, the intervenor merely underlines issues of law already raised by the primary parties. Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair. Where he presents no new questions, a third party can contribute usually most effectively and always more expeditiously by a brief amicus curiae and not by intervention. *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F.Supp. 972, 973 (D.Mass.1943) (Wyzanski, J.) *Accord, British Airways Board v. Port Authority of New York & New Jersey*, 71 F.R.D. 583, 585 (S.D.N.Y.), *aff'd mem.*, 556 F.2d 554 (2d Cir.1976).

In this case, the Attorney General presents no reasons why he should be allowed to intervene as he has no claim or defense which is common to questions of law or fact in this action. Although he states that he wishes only to argue the legal issues, he has not bothered to raise any new questions that had not already been raised by defendants' able counsel.[1] Thus, the motion to intervene is DENIED.

■ The next motion is plaintiff's motion for a preliminary injunction. As the facts are set out in plaintiff's brief and were stated at the hearing held on Wednesday, July 1, 1987, they need not be repeated in detail. This is an action brought by plaintiff, Jeffrey Lee McKinstry, who was imprisoned after being held in contempt at a civil hearing where he was not informed of his right to court-appointed counsel if indigent, and where counsel was not appointed to represent him. He was at the time indigent.[2] Plaintiff seeks class certification, and declaratory and injunctive relief.

The factors to be considered when deciding to issue a preliminary injunction are well-established and were recently set out in *Frisch's Restaurant v. Shoney's, Inc.*, 759 F.2d 1261 (6th Cir.1985):

> 1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.
> 2. Whether the movant has shown irreparable injury.
> 3. Whether the preliminary injunction could harm third parties.
> 4. Whether the public interest would be served by issuing the preliminary injunction.

1. *Has Plaintiff Shown a Strong or Substantial Likelihood or Probability of Success on the Merits?*

In *Sevier v. Turner*, 742 F.2d 262 (6th Cir.1984), a case arising out of state court

---

**1.** On oral argument, the Court inquired why the Attorney General was not representing these defendants as the defendants are generally considered state officers. Defendants' counsel responded that the defense was tendered to the Attorney General who rejected it.

**2.** He so testified at the hearing in this court and that testimony was not contradicted.

contempt proceedings against a father who was jailed for contempt for non-payment of court ordered support for a child, the Court of Appeals clearly held that an indigent father was entitled both to assistance of counsel during those proceedings, and to be informed of his right to have counsel provided for him if he were indigent. As was stated in *Sevier:*

> The plaintiff's primary claim is that he was entitled to be informed of the right to counsel, and to have counsel appointed if he were indigent, both at the October 1981 civil contempt hearing and during the July 1977 meeting with defendant Justice at which the consent order was signed. Since Sevier was incarcerated for sixteen days as a result of the civil contempt hearing, he was entitled to have the assistance of counsel during that proceeding. *See Lassiter v. Department of Social Services*, 452 U.S. 18, 25–26, 101 S.Ct. 2153, 2158–59, 68 L.Ed.2d 640 (1981); *Mastin v. Fellerhoff*, 526 F.Supp. 969 (S.D.Ohio 1981); *Young v. Whitworth*, 522 F.Supp. 759 (S.D.Ohio 1981). As indicated by the Supreme Court in *Lassiter, the relevant question in determining if a defendant is entitled to counsel during this type of contempt proceeding is not whether the proceeding be denominated civil or criminal, but rather is whether the court in fact elects to incarcerate the defendant.*

Id. at 266–67 (emphasis added).[3]

As the Sixth Circuit noted in *Sevier*, the United States Supreme Court in *Lassiter* in 1981 stated with great clarity:

> The pre-eminent generalization that emerges from this Court's precedents on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation.... That it is the defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amend-

ments right to counsel in criminal cases, which triggers the right to appointed counsel is demonstrated by the Court's announcement in *In re Gault*, 387 U.S. 1 [87 S.Ct. 1428, 18 L.Ed.2d 527] ... that the 'Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency *which may result in commitment in which the juvenile's freedom is certailed,*' the juvenile has a right to appointed counsel even though those proceedings may be styled 'civil' and not 'criminal.'

*Lassiter*, 452 U.S. 18, 25, 101 S.Ct. 2153, 68 L.Ed.2d 640, 648.

The Supreme Court summarized its position powerfully:

> In sum, the Court's precedents speak with one voice about what 'fundamental fairness' has meant when the Court has considered appointed counsel; and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. It is against this presumption that all other elements in the due process decision must be measured.

*Lassiter*, p. 26–27, 101 S.Ct. at p. 2159, 68 L.Ed.2d at p. 649.

And so it must be concluded that as early as 1981 (*Lassiter*), the Supreme Court clearly enunciated the requirement of providing counsel to indigents at any time the proceeding against the indigent can result in incarceration. This is true whether the proceeding is civil or criminal. While *Lassiter* is clear enough, *Sevier* in 1984, made it crystal clear that the rule applied to contempt proceedings in child support matters, such as that presented here.

In this case, after a hearing at which he was not represented by an attorney, plaintiff was ordered to spend 60 days[4] in the Genesee County Jail after a state Circuit Judge found him in contempt. The testi-

---

3. *See also Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) ("incarceration was so severe a sanction that it should not be imposed ... unless an indigent has been offered appointed counsel").

4. Plaintiff was given 60 days whereas Michigan law provides that plaintiff should only have been given 45 days.

mony at the hearing held in this court established that plaintiff was not informed of his right to be represented by counsel, or if indigent, that counsel could and would be appointed for him. As already noted, plaintiff established that he was indigent at the time of his contempt hearing. (See also plaintiff's Aff.Exh. A. of plaintiff's brief). It is probably not necessary to say that counsel was not appointed.

Defendants raise several defenses in response to plaintiff's claim that it can prevail on the merits.

### a. Abstention

■ Defendants first maintain that this Court should dismiss the complaint pursuant to the abstention doctrine enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) which provides that a federal court can decline to exercise jurisdiction in certain extraordinary circumstances. In *United States v. Anderson County, Tenn.*, 705 F.2d 184, 186 (6th Cir. 1983), the Court of Appeals stated that *Younger* abstention applies when

(1) there is an ongoing or pending state proceeding, (2) the proceeding is criminal, and (3) no unusual circumstances exist which would counsel against abstention, such as prosecution under a flagrantly unconstitutional statute, bad faith prosecution or an inability to raise the constitutional challenge in the state proceeding.

*Younger* abstention is properly applied to state civil proceedings "if the State's interests [5] in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the states and the National Government" so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim. *Pennzoil Co. v. Texaco, Inc.*, —— U.S. ——, 107 S.Ct. 1519, 1521, 95 L.Ed.2d 1 (1987). *Ohio Civil Rights Comm'n v. Dayton Schools*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). *See also Middlesex Co. Ethics Committee v. Garden*

*State Bar Association*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

Furthermore, the Supreme Court in *Juidice v. Vail*, 430 U.S. 327, 335, 97 S.Ct. 1211, 1217, 51 L.Ed.2d 376 (1977), held that a federal court should abstain from adjudicating a challenge to a state's contempt process, stating:

A state's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest.

In this case, plaintiff seeks to enjoin a state civil contempt proceedings. Although this might seem to run afoul of *Younger* and its progeny, it will later be seen that neither Michigan's law nor its courts afford plaintiff the opportunity to successfully pursue this federal claim.

In *Sevier, supra,* in spite of its recognition of the constitutional right involved, the Sixth Circuit *refused to issue declaratory and injunctive relief* because plaintiff had not borne his burden of showing an unwillingness on the part of the state, Tennessee, to enforce his constitutional rights. Although the *Sevier* plaintiff cited two Tennessee appellate cases which showed an unwillingness "to afford constitutional rights to fathers who are required to appear for civil contempt hearings for failure to pay child support," the Court of Appeals noted that those cases were decided prior to *Lassiter* which we have noted held that defendants are entitled to counsel in any proceedings which may result in incarceration. Furthermore, while the general right to appointed counsel was set forth in *Lassiter,* it was not explicitly set forth for this circuit prior to *Parker v. Turner,* 626 F.2d 1 (6th Cir.1980) and *Sevier.* Thus, the Sixth Circuit in *Sevier* concluded that Tennessee courts "did not indicate an unwillingness ... to enforce an established right to counsel." *Sevier, supra* at 270.

In this case, unlike the situations in *Parker* and *Sevier,* Michigan courts have

---

**5.** Such interests include the integrity of a judicial system. *See, e.g., Trainor v. Hernandez,* 431

U.S. 434, 441, 97 S.Ct. 1911, 1916, 52 L.Ed.2d 486 (1977).

shown that they will jail indigent fathers without notifying them of their right to be represented by counsel and have appointed counsel if indigent. In 1976, the Michigan Supreme Court in *Sword v. Sword,* 399 Mich. 367, 249 N.W.2d 88 (1976) held that there was no constitutional requirement to appoint counsel for an indigent father at a civil contempt hearing where the father was imprisoned. Defendants maintain that *Sword* was decided over a decade ago and thus prior to *Sevier.* Hence, defendants argue that it does not show an unwillingness of the state's appellate courts to enforce this due process constitutional right. It is, however, important to note that *Sword* was decided by Michigan's highest Court (unlike the cases in *Parker* and *Sevier*). Defendants strangely ignore the role of *stare decisis* when they imply that *Sword* is not so important because it is more than 10 years old and only one Justice who participated in that decision remains on the Michigan Supreme Court. At the very same time, defendants, through their counsel, have said that they remain bound by *Sword* even in the face of *Sevier.* More will be said of this later.

This point is underscored by the amazing decision of the Michigan Court of Appeals in *Smith v. Smith,* 155 Mich.App. 752, 400 N.W.2d 334, decided November 3, 1986, almost 5½ years after *Lassiter* and more than 2 years after *Sevier.* In *Smith* the Court said:

> Finally defendant contends he was denied due process of law because he was not represented by an attorney at the show cause hearing. This claim has been considered and rejected in a well-reasoned opinion by the Supreme Court in *Sword, supra.* We find this opinion to be persuasive and accept it in rejecting defendant's claim. Although the supreme Court noted that the court may appoint counsel if the civil contempt proceeding is complex, we do not find that such was the situation here, nor does defendant make such a claim. Accordingly, defendant's argument is without merit.

*Smith,* at 757, 758, 400 N.W.2d 334.

So without a word as to *Lassiter* or *Sevier,* the Michigan's intermediate appellate court denied the defendant in that case his rights under the United States Constitution on the authority of *Sword.* It is then clear that the situation in regard to abstention faced by the *Sevier* court with regard to the state courts of Tennessee is not the situation faced by the plaintiff here nor by persons in Michigan courts situated similarly to plaintiff.

Several other factors distinguish the present case from *Sevier* on the issue of abstention. *First,* at the hearing held in this case, defendants through their counsel, took the position that unless they were ordered by this Court, they would take the position that *Sevier* does not require the appointment of counsel. That position is simply stunning. It is not possible to read *Sevier* and reach that conclusion. The second additional factor that must be taken into account on the abstention issue is that the defendants, the seven state circuit judges, have all disqualified themselves from acting in plaintiff McKinstry's state contempt case. Their motives and reasoning were not revealed, but arguments as to mootness and ripeness were based on their disqualifications. At any rate, it clearly suggests an attempt not to be involved and/or be responsible in this case.

Under these circumstances, it is hard to conclude that the state circuit courts or the other courts of the state would vindicate the plaintiff's constitutional rights or the constitutional rights of other similarly situated persons.

Plaintiff asserts, "given the binding nature of the state court decisions ruling against the right to counsel in civil contempt hearings, [plaintiff] could be forced to serve the remainder of his sentence before obtaining relief." As was stated in *Kay v. Austin,* 621 F.2d 809, 812 (6th Cir. 1980), "[a]bstention is not appropriate when it is not practicable to wait the necessary length of time to get a definitive state adjudication and when interim cases would also raise the constitutional issue."

Since abstention is based on the doctrine of comity, that doctrine should be examined. Comity would indicate that the federal courts defer to pending proceedings in the state courts and thus avoid interfering in those proceedings. It is based on respect for the state courts, and the consequent expectation that the state courts, if not the trial courts, then certainly the state appellate courts will afford relief for grievances. This abstention theory holds that it is not appropriate for federal courts to intervene before the remedy has been fully pursued in the state court system. As we have seen, the exception to the doctrine of abstention recognized, but not found in *Sevier*, applies.

The exception to the rule of abstention is really based upon the supremacy clause of the United States Constitution, a clause every bit as important as more frequently cited clauses. Art. VI, clause (2) provides:

This Constitution and the Laws of the United States which shall be made in Pursuance thereof.... shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the contrary notwithstanding.

Here, we have defendants unwilling to make the Constitution of the United States supreme over state law.

What is so difficult to accept is that these defendants have expressed their intention to continue to jail people cited for contempt without advising them of their rights to counsel and to appointed counsel, if indigent. This is not an abstract principle that is being discussed. Plaintiff here was jailed; he was deprived of his liberty unconstitutionally. Without an order, the defendants, or those acting in their stead due to their disqualifications, may jail plaintiff again. Moreover, they have indicated they will continue to do so unless ordered by this Court not to do so. Unless ordered to advise those cited for contempt of their right to counsel, many may lose

their rights because, not knowing of their rights, they either simply failed to ask therefor or failed to appeal. This could lead to a situation that cannot be tolerated—unremedied unconstitutional deprivations.

What was the effect here of the denial of an attorney? The first noticeable effect is that this plaintiff was jailed without an attorney, and he was released when he obtained one. More importantly, however, the testimony at the hearing in this court revealed that those represented by counsel were treated far differently than those unrepresented. They had significantly better results. They were (1) not incarcerated, (2) incarcerated for shorter periods, (3) obtained earlier releases, and/or (4) submitted acceptable alternate solutions. Applying a standard statistical analysis to data generated from a specific study of this very court over a time period, it was determined that these differences could not be accounted for as merely random results, but were explainable only by the presence and participation of attorneys. The value of an attorney is demonstrated in plaintiff McKinstry's actual case. There, the state judge sentenced him to 60 days confinement when under the applicable law, he could have been sentenced to no more than 45 days. There is no question but that the presence of an attorney would have revealed the error to the judge.[6]

To summarize and understand the special circumstances which distinguish this case from *Sevier* with regard to the doctrine of abstention, the *chronology* that follows is important.

*1967*—The United States Supreme Court decided *In re Gault*, holding that a juvenile involved in delinquency proceedings was entitled to notification from the court of his right to be represented by counsel and that if he cannot afford counsel, counsel would be appointed. Juvenile delinquent proceedings are generally considered civil. The Court established very clearly that the

**6.** We are told and do accept the fact that the judge was under the false impression that a previous hearing had been held and an order entered. This, if true would have justified the

60–day period of incarceration. Had plaintiff been represented, there is little doubt this factual error would have been called to the judge's attention in time to correct his action.

right to appointed counsel arose because the juvenile delinquency proceedings could "result in commitment to an institution in which the juvenile's freedom is curtailed." *In re Gault*, 387 U.S. 1, 41, 87 S.Ct. 1428, 1451, 18 L.Ed.2d 527.

*1977*—The Michigan Supreme Court determined that the Sixth Amendment's right to counsel had no application to civil proceedings and thus those persons charged with contempt for nonpayment of child support had no constitutional right to appointed counsel if indigent and they need not be so notified. It is notable that this decision was based upon the inapplicability of the Sixth Amendment to civil cases and ignored completely the rationale of the 10–year old *Gault* case which was a due process decision.[7] *Sword v. Sword*, 399 Mich. 367, 249 N.W.2d 88 (1976).

*1978*—The impact of *Gault* and *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) was recognized by the Michigan Legislature when it modified the Michigan Motor Vehicle Code by passing the Civil Infraction Act, 1978 P.A. 510; M.C.L. § 257.741 *et seq.*, the purpose of which was to decriminalize certain routine traffic violations which were thereafter to be deemed civil infractions. Thus the State of Michigan avoided in certain cases the necessity of providing a jury trial to defendants and appointing counsel for indigent defendants. The Michigan Court of Appeals recognized the consequences of the misdemeanor character of speeding violations prior to the inactment of the Civil Infraction Act. In dealing with the prior misdemeanor nature of the traffic violations, the Michigan Court of Appeals Stated:

It was the possibility of these criminal penalties and not the fact that the proceedings were labelled 'criminal' instead of 'civil' that concerned us. As the United States Supreme Court found in *In re*

*Gault* . . ., when deciding whether the Fifth Amendment guarantee against compelled self-incrimination was applicable in juvenile proceedings labelled 'civil,' where the ultimate result might be incarceration the label placed on the proceeding is of no constitutional significance. *Thus any proceeding which could result in a deprivation of an individual's liberty is to be afforded constitutional safeguards.*

(Underlining supplied). *People v. Schomaker*, 116 Mich.App. 507, 323 N.W.2d 461 (1982).

THUS IT IS CLEAR THAT ONE MICHIGAN COURT CLEARLY RECOGNIZED THE VERY CONSTITUTIONAL RIGHTS IMPLICATED IN THE PRESENT CASE.

If the Legislature can recognize and react to constitutional principles set forth by the United States Supreme Court, it is indeed a puzzlement that the judiciary will not.

*July 3, 1980*—The Court of Appeals for the Sixth Circuit held that *Younger* abstention as applied by the District Court was appropriate in a challenge identical to that presented here. The lower court indicated that it was sympathetic to the constitutional claim, but that abstention was required. The Sixth Circuit agreed and held that "there is no reason to believe that Tennessee's appellate courts would tolerate summary and indiscriminate jailing of indigent fathers." The court found ample state remedies exist and no "showing of 'exceptional circumstances' which would warrant federal injunctive relief."[8] *Parker v. Turner*, 626 F.2d 1, 10 (1980).

*June 1, 1981*—The United States Supreme Court stated clearly, as noted before, that *Gault*'s principle was clear: that even though proceedings are civil, due pro-

---

**7.** There is no intention to fault the Michigan Supreme Court for its *Sword* decision. The rationale of *Gault* may not have been so clear as it now seems after *Lassiter* which followed both *Gault* and *Sword*.

**8.** This 1980 case made the constitutional right even clearer even as it recognized the exception

to *Younger* abstention. *See* fn. 24 for the exception where the state courts have repeatedly denied the claim of right to appointed counsel (in child dependency proceedings), *Cleaver v. Wilcox*, 499 F.2d 940 (1974); *see also* fn. 25 for the habeas corpus exception.

cess requires that a person who may be incarcerated as a result of a legal proceeding must be afforded due process at the hearing by notification of his right to be represented by counsel, and if indigent, the right to have counsel appointed. These rights are constitutionally required "when if he loses, he may be deprived of physical liberty." *Lassiter v. Dept. of Soc. Services*, 452 U.S. 18, 26, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640.

AT THIS POINT, THAT IS, BY JUNE, 1981, IT SHOULD BE PERFECTLY CLEAR THE CONSTITUTION REQUIRES APPOINTED COUNSEL FOR INDIGENTS IN THE PRESENT CONTEXT.

*September 25, 1981*—The United States District Court for the Southern District of Ohio held that notification of right to appointed counsel was required and relied on *Gault* and *Lassiter*. *Young v. Whitworth*, 522 F.Supp. 759 (S.D.Ohio).[9]

*April 11, 1983*—Judge Gibson of the United States District Court for the Western District of Michigan, again in a published opinion in a case remarkably similar in form and content to the present case, issued an injunction against state judges requiring them to accord indigent persons facing contempt charges for nonpayment of child support their constitutional right to appointed counsel. Thus, the constitutional right was held to be applicable and must be provided to such defendants in courts of the state of Michigan. The court refused to abstain finding abstention inappropriate

in view of the Michigan Supreme Court's *Sword* decision in 1977 which the court held would not likely to be decided differently now. The judge found that the *Parker* exceptional circumstances existed thus avoiding the necessity of applying *Younger* abstention. *Cobb v. Green*, 574 F.Supp. 256 (W.D.Mich.).

*August 8, 1984*—Here, the Court of Appeals for the Sixth Circuit, in a case arising from the Tennessee state courts, unequivocally held that a person charged with contempt for violating a support order was entitled to be notified of his right to be represented by counsel if indigent. It held, as noted before, that the federal district court should abstain because the Tennessee state court decisions denying appointment of counsel for indigents in civil contempt proceedings were insufficient to establish the special circumstances necessary to avoid abstention.[10]

AT THIS POINT IN TIME, THERE CAN BE NO RATIONAL QUESTION AS TO THE ESTABLISHMENT OF THE CONSTITUTIONAL RIGHT TO APPOINTED COUNSEL IN CONTEMPT PROCEEDINGS.[11]

*June 21, 1985*—Judge Gibson of the Western District of Michigan, in *Cobb v. Green*, having been notified of the abstention ordered in *Sevier*, granted a rehearing as to the relief afforded and then abstained from granting relief finding that there was nothing extraordinary in that case to distinguish it from *Sevier* on the abstention is-

**9.** Two things are important to note about this decision. First, it was published so that the Michigan courts could have been aware of it. Second, it effectively disposed of the objection to the ruling based upon costs of providing counsel. "We must also be aware of the potential fiscal and administrative burden that will be imposed on the system by the requirement of counsel. It would be inane to try to understate the impact our ruling will have on state courts. The fiscal and administrative burdens accompanying this decision will be heavy. In this time of budget cutting and tax reduction, these burdens may seem even more severe. We are, however, convinced that the fundamental nature of physical liberty requires the imposition of this burden." p. 763.

**10.** The first Tennessee state court case, *Davenport v. Jailer*, 572 S.W.2d 265 (Tenn.App.1978)

did not establish the special circumstances because it was decided before *Lassiter*. Hence it could not be a basis for saying the Tennessee courts would not provide Sevier his constitutional rights. The Sixth Circuit rejected as special circumstances the intermediate and appellate court rejections of extraordinary appeals by Sevier himself because the rejections could have been on procedural grounds.

**11.** The Supreme Court had so established it in *Gault* (1967) and *Lassiter* (1981); the Court of Appeals for the Sixth Circuit in *Parker* (1980) and *Sevier* (1984); The District Court for the Southern District of Ohio in *Young v. Whitworth*, and the Western District of Michigan in *Cobb* (1983).

sue. This again was a published opinion. *Cobb v. Green,* 611 F.Supp. 877.

In the face of this chronology and the fact that the rights sought to be enforced were, without peradventure, clearly established, subject only to whether enforcement or abstention was appropriate, on November 3, 1986, the Michigan Court of Appeals held that the appointment of an attorney for an indigent in a civil non-support proceeding for contempt does not rise to the level of a guaranteed constitutional right. Thus the constitutional right to appointed counsel was denied based on the "well-reasoned opinion by the Supreme Court in *Sword,* ..." *Smith v. Smith,* 155 Mich. App. 752, 757, 400 N.W.2d 334.

If this does not constitute the special circumstances contemplated in *Sevier,* then it is doubtful if special circumstances exist. The *Smith* decision, if coupled with any one or more of the following claims made by the defendants here that *Sevier* does not establish the rights claimed, or that the language dealing therewith was dicta, or that the circuit court is bound to follow *Sword* as the Court of Appeals did in *Smith,* the conclusion is inescapable that these rights are not going to be protected by Michigan courts without the coercion of the federal courts.

The attitude of defendants in this very case is a part of the special circumstances which justify non-abstention. At the Court's suggestion to counsel, the defendants were asked whether, in the event the plaintiff was granted the relief sought in this case, they would conform their future conduct to that ruling in all applicable cases. The purpose of the question was to ascertain whether there was any necessity to deal with the class action issues. By letter of July 16, 1987, defendants' counsel informed the Court that at a meeting of July 15, 1987, the defendants declined to agree to conform indicating that even in the face of this suit and the overwhelming

law requiring them to provide persons similarly situated to the plaintiff these constitutional rights, they would not conform without an order. The special circumstances exist.[12]

Under these special circumstances where further unconstitutional deprivations will take place without remedy in the state courts, the Court must reject abstention in favor of enforcing the Supremacy clause.

b. *Ripeness*

■ Defendants also argue that given the facts that plaintiff's presently pending state case has been or will be sent, due to defendants' disqualification, to another, as yet unknown, state judge, and that the original order of incarceration has been vacated, plaintiff might not be found indigent,[13] there might not be a hearing, counsel might be appointed, and so forth, the constitutional question is not ripe for adjudication. What has been said before in connection with the doctrine of abstention and defendants' intentions argue persuasively against this position. Moreover, that argument misperceives the issue; it is not whether plaintiff is to be incarcerated, nor whether he is indigent. It is whether the defendant state judges, prior to proceeding with a contempt hearing in which the person cited may be imprisoned, will notify that person of his rights to be represented by counsel and to have counsel appointed, if indigent. The issue is whether the defendant state judges will follow the procedure necessary so that individuals such as the plaintiff can receive his constitutional right to due process?

Morever, plaintiff has already been denied counsel and incarcerated, and there is existing Michigan law which defendants seek to enforce which does not recognize a federal constitutional right. All the facts exist which make this case sufficiently concrete to be worthy of adjudication and the upholding of the Supremacy clause.

12. Considered as part of the special circumstances is also the defendants' voluntary disqualification in plaintiff's case and the seeking the assignment of a judge from outside the County to deal with plaintiff's case.

13. While plaintiff may not always be indigent, he has been found to have been indigent at the time of the hearing at which he was ordered imprisoned.

### c. *Mootness*

■ Defendants also maintain that the action is *probably* moot because a visiting judge may appoint legal counsel in the event that plaintiff can establish indigency.[14] As that has not happened, defendants' mootness challenge is not yet ripe. Moreover, as plaintiff points out, defendants could repeatedly avoid review by appointing counsel for any person who challenges their unconstitutional behavior by asking for an appointed lawyer, and given defendants' express attitude, this is not beyond question. This would leave those who didn't ask or pursue their rights without a remedy. This is exactly the situation that lead the Supreme Court to require notice to such persons of their rights so an intelligent waiver can be made. *See Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) for the proposition that a finding of mootness would be inappropriate where the challenged conduct is capable of repetition, yet evading review. Finally, plaintiff seeks to have a class certified and cites to the court legal authority for the proposition that when a named defendant's case is moot, and a conflict continues between a class of persons affected by the challenged policies and defendants, a finding of mootness is inappropriate. *See, e.g., Davis v. Ball Memorial Hosp. Ass'n*, 753 F.2d 1410 (7th Cir.1985).

### d. *Strong Likelihood of Success*

Finally, defendants argue that plaintiff cannot show a strong likelihood of success because the above-cited portion of *Sevier* is either a restatement of the position of the appellant therein or is dicta. This is based on defendants' argument that it was not a holding since the *Sevier* Court abstained from ruling on the federal constitutional entitlement question and remanded the case to the Tennessee courts. What has been said before on the abstention issue compels rejection of this argument.

*Sevier* clearly held that the plaintiff was entitled to counsel (as described herein) during his civil contempt hearing. The court did not abstain from determining the appellant's rights but only from granting the relief sought holding that there was no showing that the state appellate courts would not grant relief.[15] As we have seen, that is not the case here where, even after the clear expression of *Sevier*, the Michigan Court of Appeals in *Smith* refused to recognize the constitutional right and chose to follow *Sword*.

Moreover, defendants maintain that even if *Sevier* is not dicta, it is not precedentially binding on Michigan courts given the contrary holding by the Michigan Supreme Court in *Sword* and the absence of any contradictory holding by the United States Supreme Court. Defendants cite *U.S. ex rel Lawrence v. Woods*, 432 F.2d 1072 (7th Cir.1970) for the proposition that only the United States Supreme Court can overrule a federal constitutional ruling by a state Supreme Court. Aside from the fact that *Woods* does not stand for that proposition,[16] the argument ignores the fact that *Sevier* is binding on this Court (so far as it is applicable) and that this Court is not

---

**14.** Why a visiting judge? But for this disqualification, why not one of the defendants?

**15.** For the purpose of emphasis, the Court will note again that this was based on the fact that at the time the Tennessee courts had dealt with this question in the past (in *Davenport v. Jailer, City of Memphis*, 572 S.W.2d 265, and in the state appeal of Sevier himself), the right to appointed counsel in civil contempt was either unsettled (*Davenport*) or there was no showing in Sevier's own appeals that the Tennessee appellate court had refused appropriate relief on the basis of refusing to recognize the substantive right or for procedural reasons rather than the merits. *Sevier*, 270.

**16.** In *Woods*, the defendant was found guilty of violating a municipal ordinance and appealed. While the appeal was pending, a federal district court, in an *unrelated* declaratory judgment action held the ordinance unconstitutional under the federal Constitution. The Illinois Supreme Court upheld the conviction, and the defendant sought federal habeas corpus on the sole ground that the Illinois Supreme Court failed to follow the district court's declaratory judgment that the ordinance was constitutionally void on its face. While recognizing authority to the contrary, the Seventh Circuit held that "because lower federal courts exercise no appellate jurisdiction over state tribunals, decisions of lower federal courts are not conclusive in state courts." p. 1076. This is not the case here. The decision which is the basis for the present action is the Supreme Court's decision in *Lassiter* not a lower court's decision. While *Lassiter* on its face applies,

attempting to overrule the Michigan Supreme Court. More importantly, even if *Woods* did stand for the proposition urged by defendants, it has no application. The constitutional principle applied here, as noted on several occasions already, was set forth by the United States Supreme Court in 1981 in *Lassiter*. It set forth a principle of constitutional law clearly applicable to the present situation. It was so stated in *Sevier* in 1984. Hence the principle applicable here is neither the principle of this Court nor of the Court of Appeals, for the Sixth Circuit, but of the United States Supreme Court. This was a principle *not ignored* by the Michigan Supreme Court because *Sword* was decided before *Lassiter*.[17]

Finally, the defendants argue that while *Lassiter implies* a presumptive right to counsel in civil proceedings where incarceration may result, this presumption can be overcome by a number of other factors such as the interest of the plaintiff's son in financial support and the interest of the Michigan courts in promptly, efficiently and economically conducting non-support hearings. Nowhere in *Lassiter* or *Sevier* are these balancing considerations mentioned nor are they relevant. As the Court stated during oral argument on this motion, these balancing considerations are already made when personal liberty is at stake.

### 2. Has Plaintiff a Clearly-Established Irreparable Injury?

Next, the Court agrees with plaintiff that he has suffered an irreparable injury due to his incarceration. Moreover, plaintiff lost a just obtained part-time job and had to curtail his attempt to get a high school diploma. Finally, other class members will be threatened by the same harm. Although defendants argue that it is unknown whether plaintiff will be incarcerated by the as yet unknown judge, there is nothing contingent or hypothetical about plaintiff's past incarceration nor about the Michigan case law (*Smith*) which rejected the rights asserted by plaintiff. There is nothing contingent about the fact that defendants maintain that they are not bound by *Sevier* and thus plaintiff is put at risk.

### 3. Injunctive Relief Would Not Harm Third Parties

Plaintiff also contends that no third parties would be harmed simply by requiring defendants to inform those charged with civil contempt and subject to imprisonment if guilty, of their right to appointed counsel before proceeding and appointing counsel for indigents, if requested. Defendants argue, apparently assuming that it constitutes a defense, that requiring appointment of counsel in all non-support cases where the respondent establishes indigency would cost the taxpayers a significant amount of money. This "argument" is speculative at best and ignores the scope of the requested injunction. Indeed, as was mentioned at the hearing (and was supported by the expert testimony of Professor David L. Chambers), appointing counsel may mean

*Sevier* specifically holds *Lassiter* to apply in this situation. *Woods* simply has no application.

**17.** A closer analysis also reveals that the Michigan Supreme Court's decision in *Sword* is in conflict neither with *Lassiter* nor with *Sevier*. In *Sword,* the Michigan Supreme Court held that because the proceeding was a civil contempt which is essentially remedial or coercive and not criminal, no right to counsel exists. This is essentially a Sixth Amendment ruling. The Sixth Amendment provides: "In all criminal prosecutions, the accused shall ... have the assistance of counsel for his defense." The Michigan Supreme Court said the Sixth Amendment did not require appointment of counsel in a civil contempt proceeding even though it may result in incarceration. Five years later, the United States Supreme Court decided *Lassiter* which was a civil case. There, the court stated clearly that it was dealing not with the Sixth Amendment right to counsel provision, but rather the Fourteenth Amendment due process clause and held: "In sum, the Court's precedents speak with one voice about what 'fundamental fairness' has meant when the Court has considered the right to appointed counsel; and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Lassiter* 452 U.S. 18, 26–27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640, 649. So not only was *Lassiter* decided after *Sword,* but it was based on a different provision of the Constitution from that considered in *Sword.*

significantly less costs to the state and/or County caused by a greater monetary response to child support orders since an attorney is far more experienced in advocating a client's position and/or making adequate payment arrangements with the Friend of the Court or aiding in finding a job, obtaining a work release, etc. These attorney-aided actions may well save significant jail housing costs as well. No one is able to tell whether complying will result in a cost saving or a cost increase. Moreover, Constitutional rights *once established*, cannot be ignored because of the cost. While some courts have enforced some constitutional rights on a balancing of interests basis (including cost considerations), once the right is established, a cost-benefit analysis is irrelevant.

4. *The Public Interest Would Be Served By Issuing a Preliminary Injunction*

The Court agrees with plaintiff that the public interest is served by requiring the defendants to comply with federal constitutional requirements. Although the public interest is self-evident, defendants attempt to re-argue abstention and have questioned plaintiff's motivation in bringing suit in this court instead of state court. These arguments seem irrelevant to the public interest in having public officials recognize and provide constitutional rights where personal liberty is at stake.

Thus, the Court concludes that plaintiff's motion for a preliminary injunction must be GRANTED.

Under the provisions of Rule 65(a)(2), counsel are advised that they have twelve (12) days from the date hereof to state their positions why the hearing heretofore held should not be deemed the trial of this matter. If either party is opposed, the basis for this opposition should be stated and, in addition, there should be a statement as to the additional evidence to be presented.

IT IS SO ORDERED.