615 So.2d 78 (1993)
Ex parte Jack PARCUS.
(Re Jack PARCUS v. Nadine S. PARCUS).
1911124.
Supreme Court of Alabama.
March 19, 1993.
Rehearing Denied May 7, 1993.
Michael L. Fees and Charles H. Pullen of Watson, Gammons & Fees, P.C., Huntsville, for petitioner.
Earl E. Cloud, Huntsville, for respondent.
PER CURIAM.
WRIT QUASHED AS IMPROVIDENTLY GRANTED.
HORNSBY, C.J., and SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
MADDOX, J., dissents.
MADDOX, Justice (dissenting).
This Court having granted certiorari review, I think it should address the following issue: Whether a person has a constitutional right to be advised of his right to counsel in a contempt proceeding arising out of a failure to pay support as ordered in a divorce judgment. The Court of Civil Appeals held that the defendant, Jack Parcus, by not specifically asking for counsel, waived his right to counsel. Because I think that a defendant is entitled to be advised of his right to counsel in a nonsupport case if the proceeding may result in a jailing of the defendant, I would reverse *79 the judgment of the Court of Civil Appeals, which requires a person to affirmatively request counsel, and remand the case. Therefore, I dissent from the order quashing the writ.
Jack and Nadine Parcus were divorced in May 1989. In its judgment of divorce, the Circuit Court of Madison County, Alabama, granted to Nadine Parcus the care, custody, and control of the parties' minor child, Jackie Lee Parcus II, who was 16 years old at the time. The judgment gave Jack Parcus visitation rights and ordered him to pay Nadine Parcus $1,000 on the first day of each month, beginning June 1, 1989, until the child became 19 years of age. It also required Jack Parcus to maintain medical, hospitalization, and dental insurance on the child until the child reached age 19 and provided that medical expenses not covered by insurance would be paid by Jack Parcus on demand. The court entered a continuing child support withholding order and further ordered Jack Parcus to pay $2,000 per month alimony beginning June 1, 1989, until the remarriage or death of Nadine Parcus.
Nadine Parcus filed a petition on September 12, 1989, alleging that Jack Parcus had violated the terms of the divorce judgment. The parties agreed to a consent judgment on the issues of alimony, child support, and attorney fees; the consent judgment, entered in November 1989, provided that Nadine Parcus recover against Jack Parcus $24,996.50, together with costs. The trial court specifically reserved the right to reset for trial at a later date all other issues presented in the petition that the court had not ruled upon or that were not part of the consent judgment.
On June 5, 1991, Nadine Parcus filed a "Motion to Set Costs for Final Hearing," in which she alleged that the amount of the consent judgment, together with interest, remained unpaid except for $5,000 paid on November 2, 1989, by Jack Parcus.
On July 1, 1991, the trial court conducted an ore tenus hearing on the allegations in the petition, after which it held that Jack Parcus had willfully violated the terms of both the divorce judgment of May 1989 and the consent judgment of November 1989. The court found that Jack Parcus had the means to pay the judgment in each case.
The court "adjudged [Jack Parcus] to be in criminal contempt of court for failure to pay [the remaining balance of the consent] judgment of $19,996.50, support and maintenance of $16,218, alimony of $40,000, and attorney's fees of $3,453.10." With respect to the months in which Jack Parcus had failed to make support, maintenance, and alimony payments, the court fined him $100 per month, or $3,700, and also sentenced him to 5 days' incarceration in the Madison County jail for each such violation, a total of 185 days, to be served on the work release program, with his earnings to go toward those amounts set out here.[1] The trial court suspended the sentence for 30 days and then ordered Jack Parcus to appear at the jail on August 1, 1991, in the event he had not purged himself of the contempt by paying the fine and all the arrearage by that date.
Although he had previously had an attorney, Parcus was not represented by counsel at the July 1, 1991, contempt hearing. In fact, Parcus had informed the trial court that he could not afford to hire an attorney. The trial court did not inform Parcus of his constitutional right to the assistance of counsel, or of any right to have counsel appointed, if he were indigent, until the conclusion of the hearing, when the court was informing Parcus of his rights regarding appeal. At that point, for the first time in the proceedings, the trial judge noted that he had an "obligation" to inform Parcus of his right to counsel. However, by that time, Parcus had already been found in contempt, and the court had already pronounced sentence upon him.
The Court of Civil Appeals affirmed the judgment of the trial court, holding that *80 Parcus had not been denied due process as a result of his not having court-appointed counsel. The court based the affirmance on its interpretation of State ex rel. Payne v. Empire Life Ins. Co., 351 So.2d 538 (Ala.1977), cert. denied, 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978). In Payne, the Court set out the requirements of due process in criminal contempt cases:
"Substantial due process requires that the accused ... be given proper notice, advised of the charges and given a reasonable opportunity to be heard. It also entails the assistance of counsel, if requested, the right to be present, give testimony and call witnesses."
351 So.2d at 543. (Emphasis added.) It is not disputed that the trial court did not inform Parcus of his right to counsel prior to the contempt hearing. The Court of Civil Appeals, construing the holding in Payne, determined that a trial court need not inform a defendant of the right to counsel in such proceedings unless the defendant makes a specific request for counsel. The Court of Civil Appeals stated:
"Next, we must consider whether Mr. Parcus was denied due process as a result of his not having court appointed counsel. Pursuant to [Payne], the accused in a contempt proceeding is entitled to assistance of counsel, `if requested.' Nowhere in the record does a request for Mr. Parcus appear."
615 So.2d 75, 78 (Ala.Civ.App.1992). (Emphasis added.)
I think that the Court of Civil Appeals put too much emphasis upon the words "if requested" appearing in the Payne case. In Payne, when this Court was delineating the constitutional due process requirements, it did not intend to say that the right to counsel could be waived by a failure to affirmatively request counsel. An examination of the law surrounding the requirements of constitutional due process when a person's liberty is at stake, as it is in this case, reveals that the Court of Civil Appeals interpreted Payne too narrowly.
In Alabama, contempt is generally characterized as either "civil" or "criminal":
"Civil contempt seeks to compel or coerce compliance with orders of the court; while a criminal contempt is one in which the purpose of the proceeding is to impose punishment for disobedience of orders of the court."
State v. Thomas, 550 So.2d 1067, 1072 (Ala. 1989). (Citations omitted.) See Rule 33.1, Ala.R.Cr.P. Under the law of this State, because the goals of both "civil" and "criminal" contempt are often sought simultaneously, contempt proceedings for failure to pay alimony and child support have been termed "quasi-criminal." See Sewell v. Butler, 375 So.2d 800, 801 (Ala.Civ.App. 1979). The basis for this classification is shown in this case, where, although the goals of "civil" contempt are also present, Jack Parcus was found by the trial court to be in "criminal" contempt. This contempt is classified as "criminal" because Parcus's fine and sentence were meant as punishment for disobedience of the court order, his fine was to be paid to the court, his sentence of incarceration in the county jail was for a definite time, and his work release was unrelated to the performance of an affirmative act. See Hicks v. Feiock, 485 U.S. 624, 631-32, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988).
Alabama has also traditionally recognized the distinction between direct and indirect contempt. A civil or criminal contempt may be either direct or indirect. The Thomas Court noted the distinction as follows:
"Direct contempts are those committed in the judge's presence, where all of the essential elements of the contempt are under the eye of the court, and are actually observed by the court. In a direct contempt case, the judge can summarily and instantaneously find the person to be in contempt.
"If some of the essential elements of contempt are not personally observed by the judge, the contempt is indirect.... An indirect contempt is committed outside the presence of the court and is characterized by the act of disobeying the court's orders." *81 550 So.2d at 1072. (Citations omitted.) See Rule 33.1, Ala.R.Cr.P., using the terms "direct" and "constructive." Because Jack Parcus's alleged contempt is characterized by a defiance of the court's orders and occurred outside the presence of the court, his contempt was indirect or constructive.
The distinction between direct and indirect contempt is important because the "due process" to be afforded an individual charged with indirect contempt is more significant than the process due to be afforded when one is charged with direct contempt. Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925). Because indirect contempt proceedings can give rise to severe sanctions, including the deprivation of liberty, trial courts have been admonished to take all necessary steps to assure that the accused is afforded due process:
"A proceeding in contempt for noncompliance with a lawful court decree is sui generis and not a `criminal prosecution' as that term is commonly understood. [Citations omitted.] Because the sanctions employed by the court, pursuant to a criminal contempt adjudication, partake so heavily of a criminal nature (i.e., the actual or potential restraint of the body), however, it is essential in all but a narrow category of cases [direct contempt] that constitutional principles be applied to this process to assure substantial due process is afforded the accused."
Payne, 351 So.2d at 542. See also, State v. Thomas; and Owens v. Owens, 514 So.2d 1041 (Ala.Civ.App.1987).
In addition, § 15-12-20, Ala.Code 1975, requires the following procedures:
"In all criminal cases, including paternity cases, and civil and criminal nonsupport cases that may result in the jailing of the defendant, in any court of this state created by authority of the Constitution of 1901, as amended, when a defendant is entitled to counsel as provided by law, the trial judge shall before arraignment ascertain from the accused, or otherwise:
"(1) Whether or not the defendant has arranged to be represented by counsel;
"(2) Whether or not the defendant desires the assistance of counsel; and
"(3) Whether or not the defendant is able financially or otherwise to obtain the assistance of counsel."
Unquestionably, this statute recognizes the right of a defendant in an indirect criminal contempt proceeding to be represented by counsel. Holt v. Virginia, 381 U.S. 131, 85 S.Ct. 1375, 14 L.Ed.2d 290 (1965); State ex rel. Payne v. Empire Life Ins. Co.; Tapley v. Liberty Super Markets of Birmingham, 53 Ala.App. 363, 300 So.2d 401, aff'd, 293 Ala. 137, 300 So.2d 409 (1974). Where personal freedom is at stake, the United States Supreme Court has held that a due process basis for appointment of counsel is established. Lassiter v. Department of Social Services, 452 U.S. 18, 25-31, 101 S.Ct. 2153, 2158-61, 68 L.Ed.2d 640 (1981). As courts from other jurisdictions, both federal and state, have noted, personal freedom is obviously at stake where a court reserves the discretionary power to incarcerate a defendant in contempt proceedings for nonsupport.[2]
The more subtle issue presented in this case is whether a trial court, before beginning a contempt hearing for nonsupport, must inform an indigent defendant of the right to be represented by counsel and of the right to have counsel appointed if needed. *82 It is my opinion that the constitutional guaranty of due process mandates procedures that include informing the defendant of the right to counsel and, therefore, I would hold that an indigent defendant may not be incarcerated if this procedure is not followed.
In Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1962), the Supreme Court held that representation by counsel is essential to protect the fundamental rights of life and liberty of an accused in a criminal prosecution, and that counsel must therefore be appointed if the defendant is indigent. Id. at 342-43, 83 S.Ct. at 795-96. This rationale has been held to apply to any criminal prosecution, no matter how slight the potential punishment may be, whenever a defendant stands to be deprived of his liberty as a result of the proceeding. Argersinger v. Hamlin, 407 U.S. 25, 32, 92 S.Ct. 2006, 2010, 32 L.Ed.2d 530 (1972).
In Argersinger, the Supreme Court noted that imprisonment is never trivial to the person being deprived of liberty and that it is the result, not the nature of the particular offense, that requires appointment of counsel. 407 U.S. at 37, 92 S.Ct. at 2012. Thus, it is a defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendment right to counsel in criminal cases, that triggers the right to appointed counsel. "[F]rom the perspective of the person incarcerated, the jail is just as bleak no matter which label [civil or criminal contempt] is used." Walker v. McLain, 768 F.2d 1181, 1183 (10th Cir. 1985).
The reasons the law makes these requirements relating to representation by counsel were set out in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), wherein the Court stated that counsel was needed in such cases to "make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether [the accused] has a defense and to prepare and submit it." 387 U.S. at 36, 87 S.Ct. at 1448. The right to the assistance of counsel is such a fundamental component of due process that trial courts cannot be allowed to assume that the accused has some vague knowledge of that right and has chosen to waive it. Instead, the trial judge has the responsibility "of determining whether there [has been] an intelligent and competent waiver by the accused," and "[t]o discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand." Von Moltke v. Gillies, 332 U.S. 708, 723-24, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948).
In Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), the Court noted that "it is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request." 369 U.S. at 513, 82 S.Ct. at 889. This is the conclusion that has been employed by other jurisdictions facing this issue in factual settings similar to that presented in this case.[3] Furthermore, courts cannot presume that a valid waiver occurred. Instead, the record must show that the accused was offered counsel "but intelligently and understandingly rejected the offer. Anything less is not waiver." Carnley, 369 U.S. at 516, 82 S.Ct. at 890.
*83 I realize the concerns that have been raised about the costs that would be incurred if the Court adopts the position I advocate here. Several courts addressing this issue have recognized the potential increased strain on state resources that would result from such a holding. In this case, there was no persuasive evidence of these increased costs presented, and the clear majority rule favors the protection of individual rights.[4] A good example of the reasoning employed by most courts encountering this issue is found in Walker v. McLain:
"While the state does have an interest in minimizing the costs of such proceedings [civil nonsupport actions], this interest in monetary savings cannot outweigh the strong private interest of the petitioner and the substantial procedural fairness achieved by providing a lawyer for the indigent defendant in a civil contempt proceeding."
768 F.2d at 1184.
Other courts have discussed this issue in greater detail. See Mead v. Batchlor, 435 Mich. 480, 460 N.W.2d 493 (1990), where the Michigan Supreme Court held that if in a contempt proceeding based on nonsupport a court determines that a defendant is indigent, and the court wishes to reserve the discretionary power to incarcerate the defendant, the court shall appoint an attorney to represent the defendant, unless the right is waived.
To support the proposition that defendants represented by counsel in child nonsupport proceedings generally receive less or no jail time, the Mead court cited McKinstry v. Genesee County Circuit Judges, 669 F.Supp. 801 (E.D.Mich.1987). The McKinstry court wrote:
"What was the effect here of the denial of an attorney? The first noticeable effect is that this plaintiff was jailed without an attorney, and he was released when he obtained one. More importantly, however, the testimony at the hearing in this court revealed that those represented by counsel were treated far differently than those unrepresented.... Applying a standard statistical analysis to data generated from a specific study of this very court over a time period, it was determined that these differences could not be accounted for as merely random results, but were explainable only by the presence and participation of attorneys. The value of an attorney is demonstrated in plaintiff McKinstry's actual case. There, the state judge sentenced him to 60 days confinement when under the applicable law, he could have been sentenced to no more than 45 days. There is no question but that the presence of an attorney would have revealed this error to the judge."
669 F.Supp. at 807.[5]
Most recently, a California court stated:
"We observe that in the long run appointment of counsel to represent indigent citees is likely to be less expensive and more efficient than having these individuals represent themselves. The appointment of counsel serves the interests of the court as well as those of the litigants. These facts may furnish some comfort to the county which ultimately bears the lion's share of the cost of the entire judicial process. All of us who have served on the family law bench recognize not only the greater fairness but also the increased efficiency which results when the citee has counsel." *84 County of Santa Clara v. Superior Court, 2 Cal.App. 4th 1686, 1697, 5 Cal. Rptr.2d 7, 14 (Cal.Dist.Ct.App.1992).
Based on the foregoing, I would grant the writ and then reverse the judgment of the Court of Civil Appeals. My opinion is based entirely upon 1) what I find to be an erroneous interpretation of the Payne case, namely, the conclusion of the Court of Civil Appeals that a defendant, in a criminal contempt case, must affirmatively request to be represented by counsel, and 2) the requirements of § 15-12-20.[6] My conclusions should not be interpreted as meaning that I would require notice and appointment of counsel in all such proceedings. I would hold only that in a contempt proceeding for nonsupport an indigent defendant may not be incarcerated if the defendant has not been informed of the right to counsel or has been denied counsel.[7]
NOTES
[1] While it appears that the trial court's classification of Jack Parcus's actions as "multiple" contempts, i.e., a contempt per month, may violate §§ 12-1-10 and 12-11-30, Ala.Code 1975, (authorizing "fines not exceeding $100.00" and "imprisonment not exceeding five days"), this issue was not raised in the petition and is not considered here.
[2] See Walker v. McLain, 768 F.2d 1181 (10th Cir.1985), cert. denied, 474 U.S. 1061, 106 S.Ct. 805, 88 L.Ed.2d 781 (1986); Sevier v. Turner, 742 F.2d 262 (6th Cir.1984); Ridgeway v. Baker, 720 F.2d 1409 (5th Cir.1983); McKinstry v. Genesee County Circuit Judges, 669 F.Supp. 801 (E.D.Mich.1987); Johnson v. Zurz, 596 F.Supp. 39 (N.D.Ohio 1984); Lake v. Speziale, 580 F.Supp. 1318 (D.Conn.1984); Young v. Whitworth, 522 F.Supp. 759 (S.D.Ohio 1981); Mastin v. Fellerhoff, 526 F.Supp. 969 (S.D.Ohio 1981); County of Santa Clara v. Superior Court, 2 Cal. App.4th 1686, 5 Cal.Rptr.2d 7 (1992); Mead v. Batchlor, 435 Mich. 480, 460 N.W.2d 493 (1990); Sanders v. Shephard, 185 Ill.App.3d 719, 133 Ill.Dec. 712, 541 N.E.2d 1150 (1989); In re Marriage of Stariha, 509 N.E.2d 1117 (Ind.App. 1987); Hunt v. Moreland 697 S.W.2d 326 (Mo. App.1985); Cox v. Slama, 355 N.W.2d 401 (Minn.1984); Rutherford v. Rutherford, 296 Md. 347, 464 A.2d 228 (1983); McNabb v. Osmundson, 315 N.W.2d 9 (Iowa 1982); Padilla v. Padilla, 645 P.2d 1327 (Colo.App.1982); Tetro v. Tetro, 86 Wash.2d 252, 544 P.2d 17 (1975).
[3] See Walker v. McLain, 768 F.2d 1181 (10th Cir.1985), cert. denied, 474 U.S. 1061, 106 S.Ct. 805, 88 L.Ed.2d 781 (1986) (at a minimum, due process requires a court to inform indigent defendant threatened with incarceration for civil contempt for nonsupport of right to appointed counsel); Johnson v. Zurz, 596 F.Supp. 39 (N.D.Ohio 1984) (indigent in contempt proceedings for failure to pay child support must be informed of right to appointed counsel); Lake v. Speziale, 580 F.Supp. 1318 (D.Conn.1984) (procedural due process requires that defendant faced with potential incarceration in a civil contempt proceeding to enforce child support orders existing for the benefit of the state be notified of the right to court appointed counsel); Dube v. Lopes, 40 Conn.Supp. 111, 481 A.2d 1293 (1984) (incarceration for civil contempt for nonpayment of child support without benefit of counsel violated due process rights of indigent father not advised of right); In re Marriage of Stariha, 509 N.E.2d 1117 (Ind.App.1987) (indigent defendant who may be incarcerated for contempt for failure to pay child support has the right to be informed of that right prior to commencement of contempt hearing).
[4] I note that oral argument was heard on this case on January 11, 1993, and that this Court specifically invited amicus briefs from interested parties. However, no amicus briefs were filed.
[5] See also Michele Hermann & Shannon Donahue, Fathers Behind Bars: The Right to Counsel in Civil Contempt Proceedings, 14 N.M.L.Rev. 275 (1984). The authors conducted a two-year study of a New Mexico county. During the two years, 131 men were jailed in that county on bench warrants for civil contempt arising out of their nonpayment of child support. Of the 102 contemnors for whom records were available, 74 (72.5%) were not represented by counsel. Twenty-eight (27.5%) were represented by counsel. The contemnors who were unrepresented spent an average of 14 days in jail, while those represented by counsel spent an average of 3 days in jail.
[6] Rule 33, Ala.R.Cr.P., sets out some of the requirements of law that must be followed before a person can be held in contempt of court.
[7] I should not be understood as concluding that Jack Parcus was indigent or that he did not waive his right to be represented by counsel in some manner not apparent from the record before us.