AMERICAN INDEPENDENT PARTY, Plaintiff,

v.

Richard H. AUSTIN, Michigan Secretary of State, Defendant.

Civ. A. No. 6–71390.

United States District Court, E. D. Michigan, S. D.

Aug. 25, 1976.

James E. Wells, Southfield, Mich., for plaintiff.

Mark E. Blumer, Asst. Atty. Gen., Lansing, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

The American Independent Party (AIP) seeks declaratory relief entitling it to list alternative certified slates of candidates on the upcoming November, 1976 general election ballot under the AIP party designation. It claims that its constitutional rights under both the due process and equal protection clauses of the Fourteenth Amendment were violated by the secretary of state's insistence that no AIP candidates will be listed on the ballot unless the AIP submits a single certified slate. The defendant moves for dismissal of the complaint on a variety of procedural grounds. The court has considered the pleadings, briefs, and arguments presented at the hearing on this motion and concludes that the complaint must be dismissed because it fails to allege a constitutional violation under either the due process or equal protection clauses of the Fourteenth Amendment.

The case has its genesis in an ongoing internal feud which disrupted the Michigan AIP's March, 1976 convention. The convention was convened by State Chairman Vern G. Morse, the leader of one faction, but was adjourned by Morse before a slate could be chosen. Subsequently, the convention was reconvened by the rival faction, headed by Josephine Chapman. This faction submitted a slate of candidates and presidential electors to the state director of elections on May 17, 1976, which was certified by Chapman, as State Chairman. On May 24, 1976, the director of elections received a second slate of candidates and presidential electors, this one certified by Morse, as State Chairman. It appeared to the state's director of elections that each slate was properly certified and that each, on its face, qualified for a place on the ballot. He therefore required the AIP to submit a single slate of candidates and a single list of presidential electors to represent it in the general election ballot. This single slate was to be certified by both Morse and Chapman, and candidates to be listed on it were to be drawn from the two slates already submitted and nominated for the same offices. The threatened sanction for failure to comply was the denial of any representation for the AIP on the general election ballot.

Plaintiff asks the court to follow *Stephenson v. Board of Election Commissioners*, 118 Mich. 396, 76 N.W. 914 (1898), and *Shields v. Jacob*, 88 Mich. 164, 50 N.W. 105 (1891), holding that when it can-

not be determined which of two regularly certified rival nominees is the nominee of the party, both are to be listed on the ballot, leaving the determination to the voters rather than the courts. Subsequently, however, in *Burns v. Board of Election Commissioners,* 154 Mich. 471, 117 N.W. 1050 (1908) (per curiam), the court determined which of two rival candidates was the official party candidate, without discussion. Implicit in *Burns* is a conclusion that the voters must be presented with a single slate of candidates. It is the state's express position in this case that the voters must be presented with a single slate, but that neither the courts nor the voters should select that slate. Rather, the state now would have the party be its own final arbitrator.

█ When a federal court is presented with an alternative state ground for resolving a case brought before it on a federal constitutional claim, the rule is to avoid decision of the constitutional claim by deciding the question of state law. *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In this case, the rule of *Stephenson* and *Shields, supra,* would avoid the constitutional claim by requiring the defendants to list on the November ballot the two slates of candidates submitted. In light of *Burns,* however, it is not clear that *Stephenson* and *Shields* are still good law and that state law requires both slates to be on the November ballot.

█ After *Stephenson* and *Shields* were decided, Michigan enacted new election laws. The director of elections interprets these laws, *e. g.,* M.C.L.A. §§ 168.72, .532, as being premised upon a limitation of one slate of candidates to each party. His interpretation of the state's current election laws is entitled to some weight when the meaning of those laws is not otherwise clear.

It is not at all clear that *Stephenson* and *Shields,* which were decided nearly a century ago, represent the present law of this state. The court is reluctant to intrude upon the state's administration and interpretation of its election laws by deciding whether those laws require both AIP slates to be listed on the ballot. It is sounder policy in this case, more attuned to principles of comity, to decide the constitutional questions which grow out of the actions of the director of elections than to decide such an uncertain and politically charged question of state law.

The gist of the AIP claim under the equal protection clause, although not articulated, is that the state invidiously discriminates against the AIP by denying it a place on the ballot if it refuses to select and certify one slate, from the two slates already submitted, as its candidates under the name and symbol of the AIP, while granting ballot space to parties that submit single certified slates. Under the due process clause, the AIP claims that the state is arbitrarily denying its members the right to exercise their vote for the party.

█ No state may regulate its elections in a manner that violates the equal protection clause. *Williams v. Rhodes,* 393 U.S. 23, 29, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). The restriction on access to the electoral process which the state seeks to impose on the AIP in this case directly burdens the party's freedom to run candidates for office and also the voters' ability to voice preferences. Hence, it must survive "exacting scrutiny", and can be sustained "only if it furthers a 'vital' governmental interest." *Buckley v. Valeo,* 424 U.S. 1, 94, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976). This standard of review, however, "provides no litmus-paper test for separating those restrictions that are valid from those that are invidious." *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974).

> "The rule is not self-executing and is no substitute for the hard judgments that must be made. Decision in this context, as in others, is very much a 'matter of degree,' . . . very much a matter of 'consider[ing] the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification.'" *Id.*

*Compare Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), *with Williams, supra.*

In *Storer*, the Court sustained a provision of the California Elections Code which barred an independent candidate from the ballot if he or she had a registered affiliation with a qualified political party at any time within one year prior to the immediately preceding primary election. It recognized that the state has substantial interests in encouraging compromise and political stability, in taking steps to insure that the election winner represents a majority of the community, and in providing the voters with an understandable ballot. It approved the state's general policy "to have contending forces within the party employ the primary campaign and primary election to finally settle their differences." 415 U.S. at 735, 94 S.Ct. at 1281.

> "The general election ballot is reserved for major struggles; it is not a forum for continuing intraparty feuds." *Id.*

Specifically, the Court held that the one-year disaffiliation provision furthered the state's compelling interest in protecting the stability of its political system and outweighed the interests of the candidates and their supporters in making a late decision to seek independent ballot status.

■ In this case, the AIP's demand for ballot space for both slates impinges upon Michigan's interests in regulating the number of candidates on the ballot and in minimizing the likelihood of voter confusion. These are substantial and compelling state interests. *Storer, supra; Bullock v. Carter*, 405 U.S. 134, 145, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Jenness, supra; Williams, supra.*

■ While it is not clear that the director of elections' action in this case was a correct interpretation of Michigan law, it has been said that:

> "It is too plain for argument . . . that the State may limit each political party to one candidate for each office on the ballot and may insist that intraparty competition be settled before the general election by primary election or by party convention. See *Storer v. Brown*, 415

U.S. at 733–736 [94 S.Ct. at 1280–1282]." *American Party of Texas v. White*, 415 U.S. 767, 781, 94 S.Ct. 1296, 1306, 39 L.Ed.2d 744 (1974).

There is nothing invidious in discrimination by the state against political parties on the basis of the number of slates of candidates submitted for listing on the general election ballot. The state's single-slate directive to the AIP in this case did not offend the equal protection clause.

Implicit in the secretary of state's one-party/one-slate directive to the AIP was a requirement that the party itself—rather than the voters, the state's administrative bodies, or the courts—must select that slate. It must be determined, then, whether this requirement was necessary to further compelling state interests.

■ *American Party of Texas v. White, supra*, indicates that the state may require that intraparty strife be resolved by primary election or by party convention. In this case, it is no longer possible to resolve the intraparty dispute by primary election or by the state's party convention. It is not too late, however, for the AIP to begin to put its own house in order by whatever internal procedures it deems appropriate. Furthermore, the state has a legitimate interest in referring an internal dispute back to the party for resolution: it may rightfully require a substantial showing of a "party structure demonstrating some degree of political organization", *Williams, supra*, 393 U.S. at 70, 89 S.Ct. at 31 (Warren, C. J., dissenting), before allowing that party to list its candidates on its general election ballot.

■ The national AIP party convention, which is forthcoming, is a proper forum for resolving intraparty disputes about candidates for national office, and there are pervasive national interests in leaving the selection of candidates for national office to the national party conventions, rather than to the states. See *Cousins v. Wigoda*, 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975). It would not be proper for a federal court to select a slate of candidates, *see O'Brien v. Brown*, 409 U.S. 1, 92 S.Ct. 2718, 34

L.Ed.2d 1 (1972), and neither party to this lawsuit requests such relief. In the interests of political stability and in avoiding voter confusion, the state may refuse to subject the voters to the responsibility for resolving such a dispute without offending the Fourteenth Amendment. Finally, the state may also decline to interject its own administrative agencies into the candidate selection process. By so doing, Michigan avoids both the potential danger of requiring candidates to be designated in violation of national party procedure and the financial burden of a state administrative procedure for resolving internal party feuds.

The state's requirement that the AIP must itself agree upon a single slate of candidates fully accords with the long-established tradition that American political parties must resolve their intraparty disputes internally. Such a requirement relieves the voters, the state, and the courts of the responsibility for solving internal party problems, allows the party to resolve its own problems, and provides a means of assuring the state that the party has problem-solving capabilities and some measure of internal cohesion. The court concludes that this requirement directly furthers important state interests and does not unduly burden the party or its candidates. It does not offend the equal protection clause.

The AIP also claims that the state violated its rights and the rights of its followers under the due process clause of the Fourteenth Amendment. The state must follow the strictures of the due process clause in regulating elections, just as it must obey the commands of the equal protection clause. *See Williams, supra*, 393 U.S. at 42, 89 S.Ct. 5 (Harlan, J., concurring). In this case, however, the state's one-party/one-slate rule is a requirement that is not disproportionate to the magnitude of the state interests that it seeks to protect.

The AIP has alleged constitutional violations under neither the equal protection clause nor the due process clause. Accordingly, the complaint will be dismissed.

So ordered.