Richard B. KAY, Plaintiff-Appellant,

v.

Richard AUSTIN, Secretary of State;
Frank J. Kelley, Attorney General of
Michigan, Defendants-Appellees.

No. 80–1292.

United States Court of Appeals,
Sixth Circuit.

Argued April 29, 1980.

Decided April 30, 1980.

Richard B. Kay, Cleveland, Ohio, for plaintiff-appellant.

Jann Ryan Baugh, Asst. Atty. Gen. of Michigan, Lansing, Mich., for defendants-appellees.

Before KENNEDY, MARTIN and JONES, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Appellant Kay, a candidate for President of the United States, appeals from a judgment of the District Court for the Western District of Michigan refusing to order his name placed on the May 20, 1980 presidential primary ballot.

Appellant Kay filed suit in the Western District of Michigan on March 31, 1980, alleging that he had been denied his constitutional rights through the failure of the Michigan Secretary of State to place Kay's name on the ballot as a candidate for the Democratic presidential nomination. Kay had attempted to qualify as a candidate through Mich.Comp.L.Ann. § 168.614, which provides:

(1) By 4 p. m. of the first Friday in March in each presidential election year, the secretary of state shall issue a list of the individuals generally advocated by the national news media to be potential presidential candidates for each party's nomination by the political parties for which a presidential primary election will be held pursuant to section 613.

On January 28, 1980, Kay sent the Secretary of State an affidavit stating that he had traveled into thirty states in pursuit of the Democratic nomination and had been interviewed by "over 540 members of the news media including 257 members of the written news media, 141 radio stations and 142 TV stations" and requested his name be placed on the ballot. He also alleges that

he submitted a number of newspaper clippings in support of his claim of entitlement under the statute.[1] On February 11, 1980, Kay sent a letter to the Secretary of State stating, that he had been placed on the ballot in Florida and Georgia under a similar statute. On February 27, 1980, Bernard J. Apol, Director of Elections, responded in a letter which cited the statute and informed him of the various means of having his name placed on the ballot.[2] It also informed him that if his name were selected, he would be so informed shortly after March 7, 1980, the first Friday in March. On March 7, 1980, Secretary of State Austin issued his list of candidates. Kay was not on this list. He called the office of the Secretary of State on March 20, 1980 and learned that his name had not been included as a candidate. He then filed suit on March 31, 1980.

In his opinion, filed April 18, 1980, the District Judge stated that the language of Mich.Comp.L.Ann. § 168.614 was imprecise. He did not reach the question of whether it was unconstitutionally vague since he held as a preliminary matter that Kay lacked standing to bring the action. This holding was based on Kay's failure to utilize the other routes providing access to the ballot, such as petitions. The District Judge held that the complained of injury was not directly traceable to the Secretary of State's action, since Kay "contributed to [his] plight in failing to act upon readily available and promising alternate avenues of relief."

On appeal, Kay urges that he met the requirements of § 168.614 but was discriminated against by the Secretary of State. Alternatively he asks that the statute be found unconstitutional as void for vagueness for failing to define the words "potential," "generally advocated," "news," and "media." He further contends that the

---

1. Although the Secretary of State has no record of receiving these clippings, for the purposes of this decision the Court assumes they were sent and received. Copies of the articles were marked as an exhibit at the hearing held before the District Court.

2. In addition to the means of qualifying relied upon by Kay, § 168.614 permits the more traditional method of signatures on nominating petitions and the submission of names by a political party's state central committee.

statute represents an improper delegation of authority by the legislature to the Secretary of State by its failure to set policies and standards.

The Michigan Secretary of State counters, asserting that the statute embodies a legitimate attempt by the state legislature to regulate the number of candidates on the ballot and does not impose an impermissible burden on candidates. He claims that the state can constitutionally require (1) a substantial showing of voter interest; (2) such interest shown prior to the election; (3) and some degree of political support. This, it is argued, the statute does require. Appellee further argues that Kay had no standing for the reasons stated by the District Judge. Finally, appellee urges this Court to hold Kay barred from relief by laches since he could have learned that his name had not been included on the list nearly two weeks before he enquired and since he then delayed another eleven days before filing suit. This delay, it is argued, caused the appellee to make a material change of position in reliance on the lack of any potential claim's being pressed.

■ By choosing to regulate elections, the state sets up a tension between state interests and individual rights. It has been held that the state has an interest in avoiding voter confusion, *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971); *American Independent Party v. Austin*, 420 F.Supp. 670, 673 (E.D.Mich. 1976), through the reasonable regulation of the number of candidates. *Bullock v. Carter*, 405 U.S. 134, 145, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972). The state also has a compelling interest in maintaining the stability of its electoral system, *McCarthy v. Austin*, 423 F.Supp. 990, 996 (E.D.Mich. 1976) (three judge court); *cf. Williams v. Rhodes*, 393 U.S. 23, 32, 89 S.Ct. 5, 11, 21 L.Ed.2d 24 (1968), and may thus require a preliminary showing of a significant modicum of support. *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 185, 99 S.Ct. 983, 991, 59 L.Ed.2d 230 (1979). Although not as compelling as the citizen's interest in casting an effective

vote, *Bullock v. Carter*, 405 U.S. 134, 142–43, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972), the right to be a candidate has been recognized as an important and related interest. "Access restrictions also implicate the right to vote because absent recourse to referendums, 'voters can assert their preferences only through candidates or parties or both' . . . . By limiting the choice available to voters, the State impairs the voters' ability to express their political preferences." *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979). In addition to implicating the right to cast one's vote effectively, ballot access restrictions also have a correlative effect on the right to associate in order to advance one's beliefs. *See id.* at 184, 99 S.Ct. at 990; *Buckley v. Valeo*, 424 U.S. 1, 14, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976) (per curiam); *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). Thus, although the right of a candidate to ballot access may not necessarily be entitled to the rigorous standard of review given disenfranchisement cases, *Bullock v. Carter*, 405 U.S. 134, 142–43, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972), restrictions on that access must be justified by important state interests at a minimum.

■ Although the District Judge did reach a tentative conclusion that the statute was vague, he did not ultimately hold this since he found that the action was barred by Kay's lack of standing. In so finding, the District Judge appears to have substituted the definition of relief for that of standing. In other words, it may be, as the District Judge found, that Kay's failure to follow alternate routes to the ballot may preclude him from any entitlement to relief. This would, not, however, affect his standing to present the question to the court for adjudication. Standing requires that a litigant have a personal stake in the outcome of a controversy as a result of having suffered some actual or threatened injury. *Davis v. Passman*, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979); *Warth v. Selden*, 422 U.S. 490, 498–501, 95 S.Ct. 2197, 2204–2206, 45 L.Ed.2d 343 (1975).

This requirement arises from the case or controversy provision of the Constitution and is satisfied by a real and substantial controversy admitting of specific relief through a decree of conclusive character as opposed to an advisory opinion. *Buckley v. Valeo*, 424 U.S. 1, 11–12, 96 S.Ct. 612, 630–631, 46 L.Ed.2d 659 (1976) (per curiam). It cannot be doubted that when a candidate has followed a procedure set up by the state and is then denied a right as a result, that a real injury arises creating a justiciable cause of action. *Cf. Griffin v. Burns*, 570 F.2d 1065, 1076 (1st Cir. 1978).

■ The existence of alternative routes does not lessen in any degree the injury arising from the application of a vague statute to a person. Indeed, the Supreme Court has held that the existence of alternate means of ballot access does not save an unconstitutional statute from challenge. *Bullock v. Carter*, 405 U.S. 134, 147, 92 S.Ct. 849, 857, 31 L.Ed.2d 92 (1972). Accordingly, the District Court erred in holding that the existence of alternate means of achieving a place on the primary ballot and the failure to pursue those alternatives deprived Kay of standing.

■ Although the interpretation of questioned state law is generally a matter best left to the states, there are instances in which federal courts may properly consider challenges to them. Abstention is not appropriate when it is not practicable to wait the necessary length of time to get a definitive state adjudication and when interim cases would also raise the constitutional issue. *Baggett v. Bullitt*, 377 U.S. 360, 375–76, 378, 84 S.Ct. 1316, 1324–25, 1326, 12 L.Ed.2d 377 (1964); *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978).

■ When the constitutionality of a statute is challenged, it is the court's obligation in determining validity not to destroy but to construe it, if possible, consistently with the will of the legislature, so as to comport with constitutional limitations. *United States Civil Service Commission v.*

*National Association of Letter Carriers*, 413 U.S. 548, 571, 93 S.Ct. 2880, 2893, 37 L.Ed.2d 796 (1973). Although as pointed out in the District Court's opinion, there are problems with the definition of a number of its operative words, the section when considered as a whole can be reasonably applied.

All of the contested phrases are capable of narrow and reasonable applications, which the Secretary of the State appears to have given them. Certain publications, television, and radio networks are clearly part of the national news media. There is no indication that the Secretary of State has looked beyond these recognized sources, which are national in reportage, distribution, and outlook.[3] The word "advocated" cannot be read in isolation from the complete phrase "advocated to be a potential presidential candidate." So read, it does not require endorsement by the national news media, but only that the national news media generally recognize that the individual is a potentially viable, but not necessarily successful, candidate. Where, as here, the purpose of a statutory provision is to open the ballot to more candidates, the Court should consider the statute in its place in the whole legislative scheme. It does not take away a right or burden any candidate but confers a benefit. *Cf. Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974). The legislature has the right to determine that the state's electors should have the opportunity to vote for those people whom the national news media have identified as genuine candidates. According to the affidavit of Howard McCowan, Elections Specialist for the State of Michigan, names are placed on the ballot under this section in three ways. The Elections Division first analyzes the national news media, then supplements that information with data furnished by the Federal Elections Commission on individuals receiving federal matching funds. In addition, the Division follows the results of primaries in other states to see which candidates receive delegates. Although these latter two

---

**3.** The only nationally distributed article on which appellant relied was an article he authored in an organizational magazine, not one of general distribution.

methods are not provided for in the statute, their use did not operate to prejudice the appellant.

■ Furthermore, it is the opinion of this Court that Kay is not entitled to equitable relief in this instance as a result of laches. Those courts which have considered comparable claims have in effect balanced the interests of the parties and required that any claims against the state procedure be pressed expeditiously. *See, e. g., Williams v. Rhodes*, 393 U.S. 23, 34–35, 89 S.Ct. 5, 12, 21 L.Ed.2d 24 (1968). As time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made, and the candidate's claim to be a serious candidate who has received a serious injury becomes less credible by his having slept on his rights. In this case, Kay waited until nearly two weeks after he knew the choice of the candidates would be made and further delayed eleven days before filing suit. During this time, the state proceeded with election preparations. According to the affidavit of Cullen L. Towne, Senior Vice-President of Doubleday Brothers & Company, one of the companies which prints election materials for the State of Michigan, by March 31, 1980—the day on which suit was filed—all of the necessary preliminary work had been done for the paper ballots, voting machine strips, and punch cards. He further stated that other supplies, such as notices of election, absentee voting material, and registration notices had been completed and shipped. As of March 31, 1980, the work completed represented from 50% to 75% of the total billable costs of $400,000. On the basis of these facts before it, it is the conclusion of this Court that the failure of the appellant to press his case when he should have known that an injury had occurred is fatal to his receiving any relief.

Accordingly, for the reasons stated above, the judgment of the District Court is affirmed.