**David DUKE, William P. Overson, Robert R. Ortgiesen, and David M. Walsh, Plaintiffs,**

**v.**

**Kathleen S. CONNELL, in her capacity as Secretary of State of the State of Rhode Island, Defendant.**

**Civ. A. No. 92–0014L.**

United States District Court, D. Rhode Island.

Jan. 30, 1992.

Michael DiBiase, Blish & Cavanagh, Providence, R.I., for plaintiffs.

Kara M. Fay, Dept. of Atty. Gen., Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter comes before the Court on plaintiffs' motion for preliminary injunctive relief. Plaintiffs are David Duke ("Duke"), a Louisiana State Representative [1] seeking the Republican presidential nomination, and three Rhode Island residents who wish to vote for Duke in the Republican primary. They seek an order compelling Secretary of State Kathleen S. Connell ("Connell") to place Duke's name on the ballot as a candidate for President in the Republican primary to be held in Rhode Island on March 10, 1992. For the reasons set forth below, plaintiffs' motion for a mandatory preliminary injunction is granted.

## I. BACKGROUND

There are three methods for admitting a presidential candidate to the Rhode Island primary ballot:

> 17–12.1–4. *Presidential candidates.*—(a) The secretary of state shall announce ... the names of those bona fide national candidates for presidential nominee known to the secretary....
>
> (b) Any other person seeking the endorsement of a national political party for which a primary is being held shall ... file with the secretary of state (1) a

---

1. Duke recently ran for Governor of Louisiana, defeating the Republican incumbent in a primary but losing to a former Democratic Governor, garnering 39% of the vote.

written request signed by the chairman of the state committee, or (2) a petition signed by at least one thousand (1,000) qualified party voters, whose names shall have been previously certified by the local canvassers, requesting that the secretary of state place his or her name on the ballot, and the secretary of state shall announce his or her name as a presidential nominee.

R.I.Gen.Laws § 17–12.1–4 (1988 Reenactment). A bona fide national candidate is "a person who is generally recognized nationally as a presidential contender within his [or her] respective party." *Id.* § 17–12.1–12(C).

Traditionally, Connell and her predecessors have announced as bona fide national candidates only those names recommended by the State Committee Chairman of each party. *Id.* § 17–12.1–4(b)(1). In this case the Chairman of the Rhode Island Republican Party, Robert Rendine ("Rendine"), informed Connell that President George Bush was, in his opinion, the only person who met the requirements of a bona fide national candidate.

On December 30, 1991, pursuant to section 17–12.1–4(a), Connell held a meeting with her policy and legal advisors to determine whether any other candidates met the definition of bona fide national candidate. Connell had previously received a written notification of candidacy from Patrick Buchanan and material indicating that although he had never held elective office, he had been an advisor to three Republican Presidents (Nixon, Ford, and Reagan) and was a columnist for various publications. Connell determined on that information that Buchanan was a presidential contender recognized by the National Republican Party. Although Duke had not communicated directly with Connell, he had made an announcement on December 4, 1991, on national television that he was a candidate for the Republican nomination, and Connell knew this. Connell decided that Duke was not a bona fide national candidate on December 30, 1991, and thus announced that she would designate only the names of George Bush and Patrick Buchanan for the Rhode Island Republican primary ballot.

Duke could still gain access to the ballot by submitting a petition of 1,000 qualified signatures no later than January 7, 1992. *Id.* § 17–12.1–4(b)(2). His supporters attempted to do that but secured only about 600 signatures in the short time available.

On January 7, 1992, plaintiffs filed this action for mandatory injunctive relief. They claim that their constitutional rights have been violated because Connell's decision to exclude Duke from the ballot was based solely upon Duke's ultra right-wing political beliefs and the controversy surrounding his candidacy. Furthermore, plaintiffs contend that the statutory procedure governing ballot access is unconstitutional. The Court denied their motion for a mandatory temporary restraining order but set the matter down for an expedited hearing. After conducting a full evidentiary hearing on the motion for preliminary injunction, the Court took the matter under advisement. The motion is now in order for decision.

## II. DISCUSSION

In deciding a motion for preliminary injunction, this Court must consider the following four factors:

(1) The potential for irreparable injury to plaintiffs if injunctive relief is denied;

(2) The balance of hardship to defendant if the relief is granted;

(3) The effect on the public interest of a grant or denial of relief; and

(4) The plaintiffs' likelihood of success on the merits.

*Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir.1991). The Court is satisfied that plaintiffs have met their burden under this four-part test.

First, plaintiffs will suffer irreparable injury if the motion for a preliminary injunction is denied. The ballots are scheduled to be printed the first week of February 1992. If Connell does not add Duke's name before then he will be precluded from running in the primary on March 10, 1992, and his Rhode Island supporters will be denied the opportunity to vote for him and, more importantly, the opportunity to run as

delegates to the National Republican Convention pledged to him. In effect the denial of a preliminary injunction would serve to deny plaintiffs all permanent relief. Therefore, there is clearly no adequate remedy at law.

Second, Secretary of State Connell will suffer no hardship if relief is granted. Because the ballots have not yet been printed, Duke's name may be added without delaying the process or increasing the expenses of the primary.

Third, the public interest will not be adversely affected by granting the motion. Expanding political opportunity by allowing reasonably broad access to the ballot benefits the political process and the voting public. *Lubin v. Panish*, 415 U.S. 709, 713, 94 S.Ct. 1315, 1318, 39 L.Ed.2d 702 (1974).

Finally, as will be explicated below, plaintiffs are likely to succeed on the merits because they have established a violation of their constitutional rights on equal protection and due process grounds.

A. *Likelihood of Success on the Merits*

Constitutional challenges to state election procedures are governed by the following method of inquiry:

> [The Court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983). A threshold matter concerns whether Duke's exclusion from the ballot constituted state action. *Belluso v. Poythress*, 485

F.Supp. 904, 910 (N.D.Ga.1980). In Rhode Island the Secretary of State has ultimate control over access to the primary ballot. Therefore, this Court has no difficulty finding that the requisite state action exists.

The right of a candidate to gain access to a ballot, while less compelling than the right to vote, is nevertheless an important and related interest. *Kay v. Austin*, 621 F.2d 809, 811 (6th Cir.1980). "[A]ny regulation of access to the ballot must conform to the principles of equal protection and due process, guaranteed by the fourteenth amendment." *Kay v. Mills*, 490 F.Supp. 844, 849 (E.D.Ky.1980). Statutes restricting such access infringe upon both "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968).

Balanced against the candidate's right of access is the legitimate state interest in regulating the number of candidates on a ballot in order to avoid voter confusion and frustration of the democratic process. *Lubin*, 415 U.S. at 715, 94 S.Ct. at 1319. Any restrictions on access, however, must be reasonably necessary to achieve the legitimate state interest. *Id.* at 716, 94 S.Ct. at 1320. Therefore, states may require candidates to demonstrate sufficient public support in order to prevent the ballot from becoming a laundry list of candidates, not all of whom are serious contenders. *Id.* at 715, 94 S.Ct. at 1319. This requirement serves to protect the integrity of the political process.

The issue, therefore, is whether the Rhode Island statutory procedure is reasonably necessary to achieve the legitimate state interest of regulating ballot access.

B. *Void for Vagueness*

Plaintiffs contend that the Rhode Island statutory procedure cannot withstand constitutional challenge because it is unduly vague. A vague statute, therefore, is not reasonably necessary to achieve the

legitimate state interest of regulating ballot access.

A statute may be found void for vagueness if a reasonable person must necessarily guess at its meaning. *Hynes v. Mayor of Oradell*, 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976). There are three potentially fatal infirmities. First, the applicable coverage of the statute may be unclear. Second, the statute may fail to specify what those within its reach are required to do in order to comply. Third, the statute may permit public officials to exercise unreviewable discretion in their enforcement of the statute because of a lack of standards. *Id.* at 621–22, 96 S.Ct. at 1761–62. All three infirmities are present in this case.

With respect to the first *Hynes* infirmity, the provision does not provide any meaningful criteria. Section 17–12.1–12(C) defines a "bona fide national candidate" as a person "generally recognized nationally as a presidential contender within his [or her] respective party," but this definition fails to specify *by whom* a candidate must be "generally recognized nationally." Therefore, a candidate cannot discern whether he or she will be among the chosen few. *Kay v. Mills*, 490 F.Supp. at 852.

Regarding the second *Hynes* infirmity, the provision fails to specify what a candidate must do in order to comply, and in attempting to comply, a candidate must necessarily guess at its meaning. *Id.* Would it be sufficient to show that the candidate has supporters in more than one state? If so, how many states would suffice? Several states permit a candidate to be placed on the ballot if he or she has been generally advocated or recognized by the national news media. *See, e.g.,* Ga. Code Ann. § 21–2–193(a) (Michie 1987); Mass.Gen.Laws Ann. ch. 53, § 70E (West 1990); Mich.Comp.Laws Ann. § 168.614a(1) (West 1988); Tenn.Code Ann. § 2–5–205(a)(1) (1991 Supp.). Some courts have upheld these statutes saying that reference to the media as a source of candidate recognition permits the statutes to be reasonably applied. *See Kay v. Austin*, 621 F.2d at 812 (upholding Michigan statute); *see also LaRouche v. Sheehan*, 591 F.Supp. 917, 925 (D.Md.1984); *Belluso v. Poythress*, 485 F.Supp. at 913. But those decisions are questionable at best. In the latter two cases the courts admitted that the media-recognition standard was somewhat nonspecific. *LaRouche*, 591 F.Supp. at 925; *Belluso*, 485 F.Supp. at 913. In any event the media-recognition standard provides more objective criteria than the Rhode Island statute, which is devoid of any standard.

Finally, section 17–12.1–4(a) permitted Connell to exercise unreviewable discretion in her determination of Duke's candidacy. Connell stated that Duke could not be considered a presidential contender within his party because the party leaders had disavowed him. By limiting her determination of Duke's candidacy to the disapproval of party leaders, however, Connell failed to consider Duke's support among the populace, for whom the party leaders do not necessarily speak. The term *"within his party"* is capable, therefore, of more than one reasonable interpretation, and this Court cannot say which is correct. "The fact that an unduly vague law deprives a court of the ability to review potentially arbitrary or discriminatory decisions of public officials, is one of the principal reasons for the void-for-vagueness doctrine." *Kay v. Mills*, 490 F.Supp. at 852.

In addition to finding section 17–12.1–4(a) unduly vague, the Court finds that this section is discriminatory on its face because it draws a distinction between otherwise-valid candidates without a rational basis. *Id.* at 850. A "bona fide national candidate" is given a preferred position over a candidate with only regional support, a "dark horse" candidate, a one-issue candidate, or a "favorite son" candidate, all of whom deserve ballot consideration on the same basis as any serious candidate. *See id.* at 853. This provision, therefore, falls with unequal weight upon certain candidates and their supporters. *Bullock v. Carter*, 405 U.S. 134, 144, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972).

The Court also finds section 17–12.1–4(b)(1) unduly vague because it provides

absolutely no standards for the State Party Chairman to follow in recommending candidates to the Secretary of State. This lack of standards permits the Chairman to discriminate against any candidate whose views he does not approve, even those of an incumbent, while acting under the guise of statutory mandate.

Closely analogous to section 17–12.1–4(a) and (b)(1) is the statute that was addressed in *Kay v. Mills, supra,* which required the state board of elections to nominate "all those generally advocated and nationally recognized as candidates of the political parties." *Id.* at 846. The District Court did not dispute that national recognition might be a valid basis for ballot access, or that a state agency could be empowered to determine which candidates met the standard. Nevertheless, the District Court held that the state agency's discretion in making such a determination could not be uncontrolled. *Id.* at 853. Therefore, the Court found that the statute was void for vagueness because it provided no standards for the state agency to follow. *Id.* This Court finds section 17–12.1–4(a) and (b)(1) similarly lacking in standards and, therefore, void for vagueness.

Accordingly, the Court holds that section 17–12.1–4(a) and (b)(1) are unconstitutional on their face.

The Court also finds that Connell and Rendine discriminated against Duke. A primary election allows voters to choose one candidate to represent their party, but "it is essential that the choice of candidates not be limited to those arbitrarily selected by persons whose motives may be of a partisan political nature." *Kay v. Mills,* 490 F.Supp. at 853. The statute permitted Connell and Rendine to narrow the field of candidates for whom the public would be allowed to vote in the primary, thereby depriving voters of the opportunity to effectively exercise their voting rights. The public has the right to choose from as large a field of candidates as can demonstrate sufficient support to establish their serious-

ness. *Lubin,* 415 U.S. at 718–19, 94 S.Ct. at 1320–21. Allowing the Secretary of State and the State Party Chairman to make preliminary decisions in these matters corrupts the democratic process. There was no rational basis for Connell and Rendine to have treated Duke differently from any other serious candidate. The only proper method of ballot access is one that establishes a level playing field for all candidates and leaves the ultimate decision to the voters.

#### C. *The Petition Method*

■ The only remaining method for ballot access under Rhode Island law is by petition. R.I.Gen.Laws § 17–12.1–4(b)(2). Clearly, requiring candidates to submit a petition signed by 1,000 qualified voters is a direct indicator of candidate support. This method is nondiscriminatory because it burdens all candidates equally, regardless of their political views.

The petition method is not unduly burdensome. The petition forms are available in late November, and thus, candidates and their supporters have five weeks to amass 1,000 qualified signatures from more than 320,000 persons who are eligible to vote in a Republican primary. It is to be noted that all candidates for other political offices in Rhode Island are required to submit nomination papers signed by qualified voters. *Id.* §§ 17–14–4 to –12.[2] Therefore, the Court holds that section 17–12.1–4(b)(2) is reasonably necessary to achieve the legitimate state interest of limiting ballot access to only those candidates who can demonstrate sufficient support.

#### D. *Remedy*

■ The Court must now decide upon an appropriate remedy in this case. Duke has not requested that any other candidate be removed, only that he be granted access. Were the Court to deny relief, a grave inequity would result because Bush and Buchanan have gained access to the ballot by unconstitutional means. Furthermore, Duke should be afforded some form of relief because he was discriminated

---

**2.** For example, a person running for United States Senator or for Governor must acquire 1,000 certified signatures, *id.* § 17–14–7(a),

while a person running for United States Representative must acquire 500 certified signatures, *id.* § 17–14–7(b).

**56**

against. To remove Bush and Buchanan from the ballot, however, would not help Duke, nor would it be equitable because section 17–12.1–4(a) and (b)(1) were assumed to be constitutional. The voters would suffer most of all if they were deprived of any choice in the primary. Therefore, the Court has only two possible alternatives.

First, the Court can order that the primary be delayed to allow all candidates five weeks to satisfy the requirements of section 17–12.1–4(b)(2). The advantage of this remedy is that all candidates would gain ballot access pursuant to the same burden, thereby leveling the playing field. The disadvantage is that the ballots are due to be printed in the immediate future, and any delay would disrupt the entire primary schedule.

Second, the Court can order Connell to add Duke's name to the ballot. As the District Court in *Kay v. Mills, supra,* stated:

> The solution to the problem is to be found in practicality and common sense. It would do the plaintiff no good to strike the names of the other candidates from the ballot, and such a course of action would be unconscionable both to those candidates and to the public interest. The fairest and most practicable solution, which will preserve the rights of the plaintiff, and also the rights of the other candidates and the public, is to order the plaintiff's name placed on the ballot.

> The hallmark of a court of equity is its ability to frame its decree to effect a balancing of all the equities and to protect the interests of all affected by it, including the public. That goal is best served here by ordering the plaintiff's name placed on the ballot.

*Kay v. Mills,* 490 F.Supp. at 854–55 (following the examples set by *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), and *Hudler v. Austin,* 419 F.Supp. 1002 (E.D.Mich.1976)). This Court agrees with that reasoning. Therefore, the Court grants the mandatory preliminary injunction requiring Connell to place Duke's name on the ballot.

Unless section 17–12.1–4 is modified, any candidates participating in future primaries are forewarned that they will have to secure 1,000 qualified signatures in order to gain access to the ballot. R.I.Gen.Laws § 17–12.1–4(b)(2). Those who fail to do so may be challenged and ultimately excluded from the primary.

### III. CONCLUSION AND ORDER

Accordingly, plaintiffs' motion for preliminary injunctive relief is hereby granted. Defendant Connell is mandated to place the name of David Duke on the ballot for the Republican Presidential Primary to be held in Rhode Island on March 10, 1992.

It is so ordered.