WALLER, Chief Justice,
dissenting:
¶ 48. “States- have important interests in protecting the.integrity of their political processes ... [and] ensuring that their election processes are efficient — ” Clements v. Fashing, 457 U.S. 957, 965, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). “As time passes, the state’s interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made, and the candidate’s claim to be a serious candidate who has received a serious injury becomes *381 less credible by his having slept on his rights.” Kay v. Austin, 621 F.2d 809, 813 (6th Cir.1980). Voting for the Democratic Presidential Primary began in Mississippi on January 23, 2016. Dr; Willie Wilson waited until January 29, 2016, to raise a formal objection to the Secretary of State’s refusal to place his name on the Democratic primary ballot. The majority’s remedy — ordering Wilson’s name to be placed on the ballots to be cast oft March 8, 2016, all while accepting absentee ballots which exclude Wilson — cannot be reconciled with the State’s interest in ensuring the integrity of the election process. For this reason, I cannot join the majority.
¶ 49. Federal law mandates that absentee ballots for uniformed, services voters and overseas voters (“UOCAVA voters”) be transmitted forty-five days before a scheduled primary election. Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20302(a)(8) (2009). Mississippi’s presidential preference primary election will be held on March 8, 2016. Thus, in order to comply with the federal mandate, Mississippi transmitted ballots to UOCAVA voters on January 23, 2016. To aid compliance with the federal mandate, Mississippi requires political parties to inform the Secretary of State of qualifying candidates for a presidential preference primary by January 19. See Miss.Code §§ 23-15-296, 23-15-1093 (Rev.2015). This quick process provides little room for delay.
¶ 50. In today’s -case, the, Mississippi Democratic Party informed the Secretary of State on January 19, 2016, that Wilson did not qualify for the presidential preference primary. The party informed Wilson of its decision on January 20, 2016. With the well-known January 23, 2016, deadline quickly approaching, Wilson opted to “negotiate” and “tried to work things out” with the Democratic Party. Instead of pursuing a formal hearing with the party or seeking immediate judicial intervention, Wilson continued to “haggle” with the-party.
¶ 51. There is no dispute that Wilson had — at one time — the right to be on the Democratic-primary ballot. See Meeks v. State, 513 So.2d 563, 564-65 (Miss.1987) (“[W]hen one files the proper qualifying papers and pays the requisite filing fee to become a candidate for public office, neither the state nor, in the case of a primary election, a political party may arbitrarily or capriciously deprive him or her of a place on the ballot.”). See also Kay, 621 F.2d at 811 (“[T]he right to be a candidate has been recognized as an important interest.”).
¶ 52. Wilson’s right, however, must be considered along with the state’s “compelling interest in maintaining the stability of its electoral system.” Id. And “[a]-state’s interest in proceeding with an election increases as time passes, decisions-are made, and money is spent.” Nader v. Blackwell, 230 F.3d 833, 835 (6th Cir.2000).
¶ 53. In order to balance these two interests, political candidates must pursue claims diligently. Kay, 621 F.2d at 813. See also Fulani v. Hogsett, 917 F.2d 1028, 1031 (7th Cir.1990) (To prevent prejudice to the state, political’ candidate’s claim “must be expressed expeditiously.”). Although candidates who take proper steps to fun for political office have a right to be dn the ballot, “there is no constitutional right to procrastinate.” Dobson v. Dunlap, 576 F.Supp.2d 181, 183 (D.Me.2008).
¶ 54. “[T]here must be a substantial regulation of elections if they are to be fair and honest and if- some sort of order, rather than chaos, is to accompany the democratic processes.” Anderson v. Celebrezze, 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) (citing Storer v. Brown, 415 U.S. 724, 730, 94 S.Ct. 1274, *382 1279, 39 L.Ed.2d 714 (1974)). To protect the. state’s interest in providing a fair democratic process, reasonable and nondiscriminatory restrictions are justifiable. Id.; see also Williams v. Rhodes, 393 U.S. 23, 43, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (“[T]he State may limit the right of political association by invoking an impelling policy justification for doing so.”). Such restrictions are even more crucial in a presidential primary election, when the outcome “has an impact beyond [a state’s] own borders.” Id. at 795, 103 S.Ct. 1564. Moreover, the state’s interest in ensuring the “uniformity, fairness, accuracy, and integrity” of elections aids compliance with the strict forty-five-day deadline for UO-CAVA voters. Perry v. Judd, 471 Fed.Appx. 219, 227 (4th Cir.2012).
¶ 55. Considering the state’s important interest in protecting the integrity of the election process, courts routinely have denied relief to candidates seeking ballot access. Often, courts deny relief based on the candidate’s delay in-challenging a ballot. In Westermann v. Nelson, 409 U.S. 1236, 1236-37, 93 S.Ct. 252, 34 L.Ed.2d 207 (1972), Justice Douglas recognized that the petitioner’s “complaint may have merit,” but denied relief solely on timeliness: “in fairness to the parties I must deny the injunction, .not because the cause lacks merit but because the orderly election process would likely be disrupted by so late an action. The time element has plagued many of these election cases; but one in my position cannot give relief in a responsible way when the application is [as] tardy as this one.”
¶ 56. In Dobson, an independent candidate and voters supporting the candidate challenged Maine’s statutory election deadlines and sought an injunction. Dobson, 576 F.Supp.2d at 182. In denying the petitioners’ “last minute” challenge, the district court considered the prejudicial effect of an untimely ballot change. Id. at 187-88. The court noted that the Secretary of State had taken steps 'to prepare and print ballots, and that any injunction at that point could “run the risk of restricting the voting rights of other voters, including overseas members of the military.” Id. at 188. Ultimately, the court found that “prejudice to the Secretary in stopping the printing presses is manifest” and denied relief. Id. In Kay, the Michigan Secretary of State .refused to place a presidential primary candidate on the ballot, despite the candidate’s assertion that he met the minimum statutory requirements to run as a nationally recognized candidate. Kay, 621 F.2d at 810. In affirming the district court’s denial of relief, the Sixth Circuit found that the candidate waited too long" to challenge the Secretary of State’s decision. Id. at 813.
¶ 57. In addition to charging candidates with the duty expeditiously to pursue ballot challenges, courts also require candidates to be aware of the statutory deadlines. See Fishman v. Schaffer, 429 U.S. 1325, 1327, 97 S.Ct. 14, 50 L.Ed.2d 56 (1976) (denying relief, in part, because candidate was aware of statutory requirements' and “could have brought suit earlier”); Perry v. Judd, 471 Fed.Appx. 219, 224-25 (4th Cir.2012) (denying candidate’s “eleventh hour” challenge to Virginia election laws “which have been oh- the books for years” and hoting “Movant’s delay was not the result of a lack of notice or clarity on the part of Virginia-If Movant believed this provision violated the Constitution, he could and should have acted expeditiously”); Reform Party of Alabama v. Bennett, 18 F.Supp.2d 1342, 1351-52 (M.D.Ala.1998) (denying constitutional claim due to candidates’ failure to ascertain political party’s status as major or minor party .and:holding candidates “are charged with knowledge of the law and are required to comply with its terms”).
*383 ¶ 58. Today’s case is similar to Esiason v. Washington County Board of Elections, 220 A.D.2d 878, 878, 632 N.Y.S.2d 315 (N.Y.App.Div.1995), where, due to a misunderstanding between the Commissioner of Elections and the candidate, the candidate untimely filed certificates of nomination. Despite the candidate having a “sympathetic case,” the New York court denied relief: “relaxing the mandatory filing requirements would not only render the various deadlines set forth in the Election Law utterly meaningless, but would also interject confusion and inequality into a process where the Legislature plainly intended stability and uniformity to prevail.” Id. at 879, 632 N.Y.S.2d 315. The court further held “the mere fact that petitioners were not directly responsible for the failure to file relevant certificates in a timely fashion is of no moment.” Id.
¶ 59. Wilson’s case, too, is sympathetic. The Mississippi Democratic Party now admits that Wilson met Mississippi’s statutory requirements for inclusion on the presidential preference primary ballot. Wilson, however, is not without fault. Mississippi’s deadline to comply with UOCAVA was January 23, 2016. Wilson waited until January 29, 2016, to lodge a formal complaint challenging the Secretary of State’s decision not to include Wilson on the ballot. Seemingly lost in Wilson’s pleadings is recognition that the Mississippi Democratic Party — not the Secretary of State— incorrectly decided to exclude Wilson from the ballot. Wilson did not name the Democratic Party as a party in today’s case. And, while Wilson had the right to challenge the party’s decision through a formal hearing, he chose a different route. See Meeks, 513 So.2d 563.
¶ 60. Wilson should have sought judicial intervention with the Secretary of State rather than engaging in the clearly futile attempt to “negotiate” with the Party prior to the Secretary of State’s qualification deadlines. Cf. Miss. Dep’t of Envtl. Quality v. Weems, 653 So.2d 266, (Miss.1995) (quoting Ellington & Assocs., Inc., et al. v. Keefe, 410 N.W.2d 857, 860 (Minn.App.1987)) (“[T]he doctrine of exhaustion of administrative remedies does not require that futile attempts at administrative relief be taken before seeking a judicial determination.”). The deadlines imposed by federal law and the State’s interest in ensuring the “uniformity, fairness; accuracy, and integrity” of- elections leave no room for casual negotiations, and Wilson is charged with- knowledge of these, deadlines. By waiting to raise a formal challenge to his exclusion from > the ballot, Wilson allowed the strictly imposed federal deadline to pass and Mississippi’s election machinery to begin running. Wilson — and the majority — sidestep-these facts by “waiving” any challenge to Wilson’s.name being on UO-CAVA or other absentee ballots. Now-, UOCAVA and absentee, voters will -receive different ballots than those cast on March 8, 2016. This remedy wholly fails to recognize the State’s interest in regulating elections and the resulting prejudice from a late ballot change. The practical effect of the majority’s opinion is to invalidate Mississippi’s candidacy deadlines, as the tardiness of a party’s internal processes or the candidate’s actions to seek redress now are of no moment.
¶ 61. For these reasons, I cannot join the majority.
LAMAR AND MAXWELL, JJ., JOIN THIS OPINION.